SMITH BROTHERS, INCORPORATED, V. J. R. O'BRYAN.

No. 6624. Decided May 13, 1936.
Rehearing overruled June 10, 1936.
(94 S. W., 2d Series, 145.)

440

*Vinson, Elkins, Sweeton & Weems* and *C. M. Hightower* and *W. S. Elkins,* of Houston, for plaintiff in error.

It was error for the court not to instruct a verdict for Smith Brothers, because the undisputed evidence showed that as a matter of law, Henson, the truck driver involved in the collision with plaintiff, was an independent contractor at the time of the accident. Security Union Ins. Co. v. McLeod (Com. App.), 36 S. W. (2d) 449; Lone Star Gas Co. v. Kelly (Com. App.), 46 S. W. (2d) 656; McKinney v. Sherwin-Williams, 271 S. W., 133; 14 R. C. L., p. 71.

*Stewart & DeLange,* of Houston, for defendant in error.

The undisputed evidence establishing that Henson was a mere employee of Smith Bros., Inc., and subject to their control at the time of the accident, it was error for the Court of Civil Appeals to hold that there was sufficient evidence to warrant the submission of the question of independent contractor to the jury. Haynes v. Taylor (Com. App.), 35 S. W. (2d) 104; Texas & N. O. Ry. Co. v. Parson, 102 Texas, 157, 113 S. W., 914; Taylor v. Esparza, 8 S. W. (2d) 288; Linstead v. Chesapeake & O. R. R., 276 U. S., 28, 48 Sup. Ct., 241, 72 L. Ed., 453.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

Defendant in error, who will be designated plaintiff, sued Smith Bros., Inc., herein designated defendant, for personal injuries growing out of a collision between an automobile driven by plaintiff and a truck driven by one G. E. Henson, an alleged employee of defendant. Judgment in favor of plaintiff for $8250.00 was reversed by the Court of Civil Appeals and the cause was remanded. The Court of Civil Appeals in a majority opinion held that a requested special issue which sought to determine whether or not Henson was an independent contractor should have been submitted to the jury. Justice Lane dissented, contending that the evidence showed Henson to be an independent contractor as a matter of law.

62 S. W. (2d) 505. The sole question for decision here is whether or not under the undisputed proof Henson was an employee of defendant for whose acts defendant would be liable under the doctrine of respondent superior.

The Court of Civil Appeals made the following statement of facts which we adopt:

"At the time and for some time prior to the transactions involved in this cause Smith Bros., Inc., was engaged in a general contracting business, and in the pursuit of its work had engaged G. E. Henson, the owner of a truck, and a number of other trucks, varying in number from time to time as they were needed to haul materials from its plant on Dallas street in the city of Houston to the place where such materials were needed for its work. All of the trucks used in the work were owned by individuals other than Smith Bros., Inc. The bodies used on some of the trucks, but not on Henson's were owned by Smith Bros., Inc., and were furnished by it. All the truck owners furnishing trucks fully equipped were paid on the same basis as those for whom bodies were furnished by Smith Bros. The trucks were loaded from a hopper located at Smith Bros.' plant, and were owned and operated by it through an employee of Smith Bros. After the respective trucks were loaded, a ticket was given to the driver designating where the load was to be delivered. Such loaded material was hauled to the place so designated by the ticket and there unloaded. After the unloading, the driver was given a ticket by an employee or agent of Smith Bros., which the driver was to return to the plant to show that the load had been delivered at the place designated for its delivery. The city of Houston was divided by Smith Bros., hereinafter for convenience called appellant, into a number of zones, and the owners of the trucks in the hauling of the materials were compensated on the basis of so much per load hauled by their particular truck. The routes used in hauling the material and the speed to be traveled were controlled by the drivers of the trucks without any supervision of appellant, except they were required to use reasonable speed in delivery of the materials. The number of loads, the specific length of time in which the men were to work, were also determined by the drivers of the trucks, and the owners of the trucks bore all expenses of furnishing gas, lubricating oil, and repairs on the trucks incident to their upkeep and operation. If a truck broke down on a job, it was up to the owner to have it hauled in, and Smith Bros., Inc., never did on any occasion send out and haul in any

broken-down truck. At times the owners of several trucks applied for work with appellant, and the owner of such trucks as were placed on the job was paid for the number of loads hauled by him. All arrangements were made with the owners of the trucks direct, and the owners could and did employ any one they desired to drive their trucks, and such drivers of the trucks were paid directly by the owners.

"The owners of the trucks were paid for the number of loads hauled; it being understood, however, that, while the price per load was stipulated, the owners of the respective trucks were to receive such prices per load as to enable him to earn $1.25 per hour for the hours actually worked in the hauling of the materials. All negotiations and arrangements for the hauling were made by appellant directly with the respective owners of the trucks. The owner of the truck either drove his truck or hired some one to do so. Appellant hired no one to drive the trucks, but exercised the authority to, and it did, require the owner of the truck to furnish some one capable of properly performing the work of hauling the material.

"All the truckers used in this work were employed on approximately the same basis, and there was not any difference between the way in which Henson and the other truckers worked. Appellant did not enter into any written contract with any of the truckers, and none of them were employed for any specific length of time.

"At a former trial of this case Henson, who died before the last trial, had testified, and by agreement his testimony at the former trial was introduced in evidence. He testified that at the time of the collision in question he was engaged in the trucking business for himself; that he owned the truck he used in such business; that he had been running the truck since April, 1925, and used it in the general hauling business, hauling for anybody he could get a job with; that he had a job of hauling with Smith Bros., Inc., Scott Shambaugh, H. Holcomb, A. M. Arnold, and Gulf Bitulithic Company; that at the time he was hauling for Smith Bros. he hauled for anybody that had hauling to do; that at the time of the collision in question he was hauling for Smith Bros.; that he had hauled a load and was empty at the time of the collision; that he had been hauling for Smith Bros. about one week before the collision occurred; that he made his contract of hauling for Smith Bros. with Mr. Dean, the plant superintendent; that the agreement was that he was to haul material to Bellaire boulevard for 95 cents a load; that Smith Bros. owned no part of his

truck, not a nut in it; that in doing the hauling he alone determined the route he would travel, and he alone determined the number of loads he would haul; that he furnished all of the gasoline and lubricating oil for his truck and paid for all repairs made on the truck; that after he got hurt in the collision he hired Louis Roan to drive his truck for him; and that he himself paid such driver.

"W. N. Dean, foreman at the plant, testified that the haulers were paid by the load; the truckers furnished the trucks and their drivers and all things necessary to run the trucks; all the truckers were paid on the same basis; if the trucker's equipment did not meet Dean's approval, or if the driver was unsatisfactory, Dean would not let him work; he did not have agreements with truckers for any specific length of time that they should work, but just as long as they were satisfactory to him, and if they were not satisfactory to him either in equipment or efficiency, he would order that the truck be taken off the job; Smith Bros. had men on the job out on the street waiting for the material to come, and it was important to keep those men supplied; he told the truckers of any change from the usual starting time and that for them to be there at the time stated, and told them if they were not there at such time he would replace them by some one else; the trucking was under his supervision; the rate of pay was by the load and based on certain zones, if a trucker came to work, he was expected to continue to work as long as the job was running; he determined the kind of material to be hauled; in fixing the pay per zone, it was based on the trucker earning $1.25 per hour, including his truck; he replaced the truck that was unsatisfactory; when he put a truck on, it was agreed between himself and the truck owner that he could put the truck on the job and he would be paid so much for each load hauled by his truck; he did not reserve the right to employ the drivers and Smith Bros. never employed the drivers used by the truck owners, but, if the driver was not a capable driver, and therefore unsatisfactory, he told the owner of the truck, who removed him; he did tell them the method used in handling loading tickets; that, while the truckers were paid on a load basis, some of them were sometimes employed to do special jobs; when the various drivers would be hired by the owners of the trucks and he would permit extra trucks to be put on, he would expect and it would be understood that these drivers were going to be subject to the method of hauling just like the owner of the truck himself, and that is the way he actually

handled it; if the man was unsatisfactory, generally they would call the owner and tell him to replace the driver of the truck one, and, if it was the owner, Smith Bros. would replace the truck; if it was one of these hired drivers, then Dean just pulled him out of the line and the owner had to get somebody else, and that would have been done if necessary. Dean thought he had the power to do so, though he did not remember any particular instance, and that when a man went to work he expected him to get as many loads as he could. Dean had men waiting for him to carry the material, and he did not expect the driver to leave the job without his permission and consent, although they sometimes did so. If a man did that very often without his permission, Dean would not have him on the job."

The court also set out the testimony of various other witnesses, and while there are perhaps a few additional circumstances other than are set out in the statement above quoted, yet we do not think they add to or take from the legal effect to be given the facts enumerated.

█ In almost an identical case upon the facts the Supreme Court has recently decided that a truck driver, performing service under an agreement similar to that between defendant and Henson, was engaged in what may be termed a "special employment" analogous to that of an independent contractor. Dave Lehr, Inc., v. Brown, 127 Texas, 236, 91 S. W. (2d) 693. That case and the prior decision of Southern Surety Company v. Shoemake, 24 S. W. (2d) 7, settle this case.

In view, however, of the forceful argument of counsel for plaintiff, and the insistence that there were circumstances in this case tending to show control over Henson by defendant in excess of the control which was exercised over the truck drivers in the cases mentioned, we have again undertaken to review the whole question, not only from the standpoint of general governing rules in such cases, but from the standpoint of application of these rules in individual "truck drivers" cases; and we are thoroughly convinced of the correctness of the prior decisions and of the conclusion that Henson was not an employee of defendant.

█ There are many and varying definitions of an employee and of an independent contractor. These definitions themselves, as well as expressions in the opinions wherein they are found, clearly show that it is practically impossible to formulate a fixed rule or formula for determining whether or not a person

doing work for another is an employee or an independent contractor. The definitions formulated by the courts in many instances include, or give emphasis to, some evidentiary element which may not in all cases be a controlling factor. This is due to the fact that the presence of certain evidentiary facts is held to be controlling in certain cases, while dominant weight has been given to certain other evidentiary facts in other cases; and definitions have often been formulated in the particular case to more clearly meet the situation presented in that case. In our opinion, the simplest and perhaps the most accurate definition, abstractly speaking, of an independent contractor is that suggested by the annotator in "General Discussion of the Nature of the Relationship of Employer and Independent Contractor" in 19 A. L. R., pp. 226 to 275, and is as follows:

"An independent contractor is a person employed to perform work on the terms that he is to be free from the control of the employer as respects the manner in which the *details* of the work are to be executed." (Emphasis ours.)

Our decisions have for a long time emphasized the necessity of control over the details of the work to be done and the means by which it is done in order to create the relationship of master and servant. For instance, in many cases the courts have adopted the language quoted in Cunningham v. Railroad Co., 51 Texas, 510, 32 Am. Rep., 632, from Shearman and Redfield on Negligence, to-wit:

"He is deemed the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents not merely in the ultimate result of the work, but in *all its details*." (Emphasis ours.)

In Shannon v. Western Indemnity Co., 257 S. W., 522, the following quotation from Street on Personal Injuries was quoted with approval:

"No better test can be applied than to say that the relation of master and servant exists where the master retains or exercises the power of control in directing, not merely the end sought to be accomplished by the employment of another, but as well the *means* and *details of its accomplishment:* 'not only what shall be done, but how it shall be done.'" (Emphasis ours.)

We shall briefly summarize the particulars in which it is claimed by counsel for plaintiff that defendant exercised control over Henson, amounting according to their contention, to a complete control over the details of the work, rather than a

general control intended to facilitate service and accomplish results:

(a) Defendant had a right to direct what particular materials should be · hauled, whether topping, cement, sand or gravel.

(b) Defendant had a right to direct at what point the material should be loaded and at what particular place they should be delivered or unloaded.

(c) Defendant had a right to say how many men should be permitted to work as truck drivers;—this depending upon the amount of material which had to be hauled.

(d) There was no agreement to permit Henson to work for any particular length of time, nor to complete any particular job, nor to carry any particular material nor any particular number of loads.

(e) Defendants fixed the rate of pay, based upon a determination of distance and intended to allow a gross earning by truckers of $1.25 per hour.

(f) While Henson had worked for others, and had a right to do so, yet defendant expected him to be on the job when told to appear if he wanted work, and expected him not to leave without permission; and if his actions in either regard were not satisfactory to defendant it could refuse to let him have other work to do.

(g) The trucks and equipment were to be satisfactory to defendant.

(h) If a driver proved unsatisfactory, then it could decline to give him further work, if he were the owner of the truck; and if he were driving for some one else who owned the truck, the owner could be required to furnish a satisfactory driver.

(i) Defendant's employees assisted in loading the truck and its foreman directed where to unload materials. There were rules requiring cement and topping to be expeditiously hauled.

(j) While defendant did not choose the route to be traveled nor the speed at which trucks were driven, yet drivers were expected to make prompt delivery of materials in such manner as to best effectuate the purpose for which they were to be used.

Such other circumstances, if any, tending to show control of Henson by defendant not specifically enumerated above are disclosed by the evidence hereinafter quoted.

Giving effect to every circumstance tending to show control

over Henson by defendant, we are of the opinion that they fall short of that control over *details* as regards the means, methods and manner of doing the work necessary in order to make Henson a servant or employee of defendant. The control evidenced by many of the particulars mentioned is generally found in every agreement between employer and independent contractor. In practically every case of employment of truck drivers the employer has a right to designate the materials to be hauled, to direct to whom and where they are to be delivered, and to require a receipt showing delivery. He also has the right to require expeditious service to the end that the general results of the employment may be atttained. Yet it has never been held that these elements of control were sufficient to negative the independence of the contract, when, as here, practically all of the predominent circumstances indicate that the relationship is one of employer and contractor. We have had occasion to examine many of the decisions of other states involving the relationship of truck drivers to those for whom they were performing work, having particularly in mind the purpose of seeing to what extent elements of control, such as are in this case, were present; and we have found that practically the unanimous weight of decisions is to the effect that where the elements of control are such as are present in this case the truck driver has been held not to be an employee. Among the cases which may be cited are the following:

Coul v. George B. Peck Dry Goods Co., 326 Mo., 870, 32 S. W. (2d) 758; Wright v. Wilkins, 222 Ky., 144, 300 S. W., 342; Raponi v. Consolidated Coal Co., 224 Ky., 167, 5 S. W. (2d) 1043; Rutherford v. Tobin Quarries, 336 Mo., 1171, 82 S. W. (2d) 918; Norton v. Day Coal Co., 192 Ia., 160, 180 N. W., 905; Long v. Eastern Paving Co., 295 Pa., 163, 145 Atl., 71; Flickenger v. Industrial Accident Commission, 181 Calif., 425, 184 Pac., 851, 19 A. L. R., 1150; Whiting Mead Commercial Co. v. Industrial Accident Commission, 67 Calif. App., 618, 228 Pac., 352; Fidelity & Casualty Co. v. Industrial Accident Board, 191 Calif., 404, 216 Pac., 578, 43 A. L. R., 1304; Western Indemnity Co. v. Pillsbury, 172 Calif., 807, 159 Pac., 721; Ludlow v. Industrial Commission, 65 Utah, 168, 235 Pac., 884; Smith v. State Workmen's Ins. Fund, 262 Pa., 286, 105 Atl., 90, 19 A. L. R., 1156; Southern Construction Co. v. State Industrial Commission, 112 Okla., 248, 240 Pac., 613; In re Towne's Case, 254 Mass., 280, 150 N. E., 157; Wagoner v. Davis Construction Co., 112 Okla., 231, 240 Pac., 618; Odle v. Charcoal Iron Co., 217 Mich., 469, 187 N. W.,

243; Daly v. Blount Lbr. Co., 213 App. Div., 486, 210 N. Y. S., 814; Eckert's Case, 233 Mass., 577, 124 N. E., 421; Gallagher's Case, 240 Mass., 455, 134 N. E., 344; Hood v. Azrael, 167 Md., 641, 175 Atl., 663; Baer v. Armour & Co., 258 N. W., 135; McDonald v. Hall-Neely Lbr Co., 165 Miss., 143, 147 So., 315; Fisher Body Co. v. Wade, 45 O. App., 263, 187 N. E., 78; Fox v. Pallotto, 274 Mass., 110, 174 N. E., 190; Leech v. Sultan Railway & Timber Co., 161 Wash., 426, 297 Pac., 203; Peer v. Babcock, 230 N. Y., 106, 129 N. E., 224; Svoboda v. Western Fuel Co., 195 Ia., 1137, 193 N. W., 406.

In many of these cases the facts were almost identically the same as in this case, and in some of them the extent of control over the driver was greater than that which defendant had a right to exercise over Henson. In addition, the courts are more liberal in their interpretation of agreements when the effort is to come under the provisions of the Compensation Laws, but notwithstanding this, we find that in many of the cases cited truck drivers have been denied compensation because they were not found to be employees.

It would be superfluous to quote to any great extent from the cases cited, but for the purpose of illustrating similarity between some of them and the present case, we make reference to the case of Long v. Eastern Paving Co., 295 Pa., 163, 145 Atl., 71. Stating the facts of that case the court said:

"Examining what they said in the light most favorable to the plaintiff, the following facts appear: The paving company was engaged in the resurfacing of city streets, and maintained plants for the heating of asphalt used in connection with its work. The material was removed by conveyances to the desired points. When such hauling was necessary, the paving company made use of the service of various truck owners, including McLaughlin, who from time to time were called by telephone and offered employment. The last named owned one machine, which he kept within his own control, storing it where he desired, paying all expenses incident to its operation, including the cost of oil and gasoline, and drove in person. He was not carried on the books of the company as an employee, but, when engaged, was compensated in full for the service performed at a fixed rate for each hour of time consumed. If work was undertaken, he received orders from the foreman as to the asphalt to be loaded and taken away, and, when he reached the point where the repair work was under way, was instructed as to the place of unloading. At all times he had control of the machine, and its operation, selecting the

course over which the trip should be made. He was not subject to any orders of defendant, except as noted, but performed the work contracted for by the means deemed best suited to him. The paving company was interested only in the result to be attained."

Commenting upon these facts, the court among other things said:

"The present case is similar in fact to Thatcher v. Pierce, 281 Pa., 16, 125 A., 302, where a machine, with driver, was hired on a mileage basis to remove, in his own way, concrete from one point to another, though there the hirer paid the expenses of operation, which was not done in the case before us. It was then held that, where one was engaged in the business of hiring, as here, and lets out his truck for hauling purposes, the owner and driver having the sole control of its speed and management, the lessee not interfering with the mechanical operation, though assigning the work to be done, the relation was that of independent contractor."

The case of Whiting Mead Commercial Co. v. Industrial Accident Commission, 67 Calif. App., 618, 228 Pac., 352, is also almost a parallel case.

In Western Indemnity Co. v. Pillsbury, 172 Calif., 807, 159 Pac., 721, the court used this significant language, which we think bears directly upon the question of the control necessary to constitute one, who otherwise would be an independent contractor, a servant:

"It has been said that the true test of a contractor is that he renders service in the course of an independent occupation, following his employer's desires in the results but not in the means used. 1 Shearman & Redfield on Negligence (6th Ed.), 396. But in weighing the control exercised we must carefully distinguish between *authoritative control* and mere *suggestion as to detail or the necessary cooperation where the work furnished is part of a larger undertaking.* Standard Oil Co. v. Anderson, 212 U. S., 221, 222, 29 Sup. Ct., 252, 53 L. Ed., 480." (Emphasis ours.)

In 14 R. C. L., pp. 71 and 72, we find general language which we think has a direct and forceful application to this case. The language in question is as follows:

"The control of the workmen doing the actual manual labor in the performance of the work is an extremely important element in determining whether the employee is an independent contractor. The fact that the contractor employs, pays, and has full power to control the workmen is practically

decisive of his independence. And, on the other hand, the circumstance that he does not have the control of the workmen is entitled to consideration as showing his lack of independence. But the fact that the employer has some incidental powers over the laborers doing the actual manual work, such as the right to compel the contractor to discharge any workman who is incompetent or who commits some wrongful act or depredation, though generally a fact of some importance tending to show his subserviency, does not necessarily require the contractor to be considered a mere servant. In fact, the provision for the discharge may tend to show the independency of the contractor, as for instance, when the contract provides that the contractor shall discharge incompetent workmen in his employment. So the fact that the employer can produce the discharge of a workman only in an indirect manner through the contractor and not directly by his own act, is sometimes considered as repelling the idea of the contractor's subserviency. The employer may also reserve the right to require the employment of a greater number of workmen if he deems it necessary for the expedition of the work, or he may have the right to reduce the working force, without affecting the independence of the contractor. So, too, the contractor may be considered independent, although the employer has the right of paying the workmen directly and of charging such payments against the contractor as so much paid on the contract. And the employer may have the right to require the workmen to perform their work according to certain prescribed rules, such as requiring miners to do their work according to mining rules. Or the drivers of hacks leased from a railroad may be required to conform to prescribed regulations applicable to all of its hack drivers without affecting their independence."

Because of the similarity in many respects between the facts in the case of Norton v. Day Coal Co., 192 Ia., 160, 180 N. W., 905, and the present case, and as that case states very forcefully the governing principles, we quote to some extent from same. The circumstance that one was a driver of a team and wagon, while the other was driver of a truck is not important. The facts as stated by the court are as follows:

"The plaintiff's general business was teaming, which he pursued with his own team. For the most of the year he hauled for the city and for materialmen, thus obtaining steadier work and better pay than defendant could give him. He hauled coal for defendant only when the demand for coal was so acute that there was more hauling than the regular employees of the

defendant could handle. He admits he earned his livelihood by using his own team and working for different people with it. While he generally obtained coal hauling when he asked defendant for it, and though during some five weeks prior to his injury he did haul for defendant, he was at no time sure of obtaining it, knew at no time how much hauling he could get to do, or how long it would last. All hauling was paid for by the load, and settlement made weekly. He could apply for this work when he pleased and abandon it at any moment. He did the hauling with his own team. He was at liberty to decline any job of hauling for defendant and hauled coal for its competitors without subjecting himself to a refusal by defendant on later application to haul coal for it. It follows defendant had no right to and did not exercise any control over when plaintiff should or should not work for it, and its only power was to refuse him work which, as it happens, was a power it never exercised. The engagement between the parties was that, if plaintiff applied for any hauling and defendant had some, plaintiff would be permitted to haul. If there was no hauling when he applied, he would be advised when a job did turn up, and be permitted to haul. When there was no more hauling available, defendant would advise plaintiff of that fact, whereupon he would depart. Defendant was not concerned in whether Norton loaded or unloaded the wagon himself or with help hired by him. If he encountered any difficulties, his was the task of overcoming them. If he needed help, it was for him to hire and pay for it; and he did hire help on more than one occasion. He was told where to get coal to load and to whom to deliver it. On delivery he was to obtain a receipt and this would be the basis of settling how much was due him."

The driver sought to obtain the benefits of the Compensation Law as an employee of a Coal Company. In denying his right to do so, the court among other things said:

"In effect, his so-called employment did not differ from employing a drayman, as to whom the cases stress the fact that they are not employees because, owing to the indefinite character and amount of their work, the right to discharge is never created. Tuttle v. Co., 192 Mich., 385, 158 N. W., 879, Ann. Cas., 1918C, 664. In effect, his status does not differ from the one of a passenger in a taxi. The general concensus of authority is that the taxi driver is not the employee of the passenger though the latter can direct him when to start, what

route to travel, and as to where the passenger is to be discharged. (Citing authorities.)

"* * *

"Norton is not an employee within the act because there was no right to discharge him, and the right to discharge for misconduct or disobedience is an essential test. (Citing authorities.)

"There was no right to discharge because, as said, claimant had virtually the status of a drayman. Plaintiff could not tell when he came whether he would get any work. He was not obliged to accept any that was offered. He was at all times at liberty to haul for others rather than defendant. The most that could be done was to refrain from giving him coal to deliver. The only power the defendant had was to elect whether he should be given work and how long it should continue. There was the right to interrupt or terminate the contract, but not to discharge.

"* * *

"One can so engage himself and his team to another as that the latter shall be in control of both. But he does not become a servant merely because he engaged himself and his own team to work for another. To make the relationship the master must be in control of both man and team. (Citing authorities.)

"Defendant was given no right whatever to control the management and care of the team. And it never attempted to exercise any control on that head. The care and management remained entirely with Norton.

"The relationship of master and servant does not exist unless there be the right to exercise control over methods and detail—to direct how the result is to be obtained. The power to direct must go beyond telling what is to be done—to telling 'how it is to be done'. * * * The only right defendant had to exercise control over methods and detail, and the only right on that head that was exercised, was to direct plaintiff where to get his coal and the kind and the amount; that he should then drive on the scale and weigh and then scale or trim the load or add to it as defendant might direct; to direct to whom delivery should be made and that a receipt be obtained as the basis for giving proper credit for the haul. There was no right to exercise control, and none was exercised, over the speed with which delivery should be made or the route that should be taken in making delivery. There was less control or right to control in the case before us than there was in the many

cases wherein it was held that it was not sufficient control over method and detail to constitute an employment." (Citing numerous authorities.)

We could cite other strongly supporting authorities, but do not deem it necessary to do so. After a most careful review of the subject, we are soundly convinced that Henson was not the servant of the defendant, but occupied a position analogous to an independent contractor.

The judgments of the trial court and of the Court of Civil Appeals are set aside and judgment is here rendered in favor of defendant, Smith Bros., Inc.

Opinion adopted by the Supreme Court May 13, 1936.

Rehearing overruled June 10, 1936.