O'BRIANT v. LONE STAR CONST. CO., Inc.

No. 3188.

Court of Civil Appeals of Texas. Beaumont.

Nov. 4, 1937.

Scarborough & Ely and Edmund C. Yates, all of Abilene, for appellant.

Eskridge & Groce, of San Antonio, for appellee.

WALKER, Chief Justice.

In October, 1934, A. J. Howell, living in Post, Tex., had a trucking contract with appellee, Lone Star Construction Company, Inc., hauling crushed stone, used by appellee on a road job close to Justiceburg. Appellee loaded Howell's truck with stone; Howell hauled it to the place where it was to be used; and appellee dumped it. Howell was on the job "a month or a little more." Under NRA restrictions, Howell could drive his truck, personally, only 30 hours per week. After he worked 30 hours, his truck remained on the job and was driven by Wayland Gollehon. While on this job, Howell spent his nights in Post, in the morning drove out to his work in his truck, and at the end of the day returned to Post in his truck. Howell was paid for his services and the use of the truck by the truck load of gravel; two and

a half cents per cubic yard for a quarter mile haul and the truck "handled" three cubic yards.

On the 12th of October, 1934, having worked his 30 hours for that week, Howell selected and, with the consent of appellee, employed Wayland Gollehon to drive his truck for that day, and to haul gravel for his account. On the morning of the 12th of October, Gollehon took charge of Howell's truck and operated it all that day as Howell did when he drove it. At the end of the day's work, Gollehon undertook to drive the truck back to Post, where, as stated above, Howell kept it at night. While on the road back to Post, Gollehon, driving the truck, collided with a truck driven at the time by appellant, O. C. O'Briant.

This suit was brought by appellant against appellee for damages for the injuries suffered by him in the collision of his truck with Howell's truck. The theory of his petition was that Gollehon was the agent and servant of appellee; that at the time of the collision he was operating the truck in the course of his employment with appellee, and that he suffered the damages sued for as a proximate result of Gollehon's negligence. Appellee answered by pleas of general demurrer and general denial. On trial to a jury, judgment was entered in appellee's favor on an instructed verdict. Appellant duly prosecuted his appeal to the San Antonio Court of Civil Appeals; the case is in the docket of this court by order of transfer by the Supreme Court.

### Opinion.

Without giving further details of Howell's relation to appellee, we quote and adopt as correct the following statement from appellant's brief: "So far as the use of the truck was concerned, Howell was undoubtedly an independent contractor, the terms of which the appellee had a right to the use of the truck. It is immaterial what the legal effect of the contract was during the time that Howell himself drove the truck. He was not driving when the accident occurred. But let it be borne in mind that by a part of this contract, the truck was to stay on the job and be driven by an employee of the construction company."

For the purposes of this opinion, we concede appellant's point that the evidence raised against Gollehon the issues of negligence charged in his petition, and that such negligence was a proximate cause of his injury; and that appellant was not guilty of negligence of a nature to defeat his cause of action.

On the issue of Wayland Gollehon's relations to Howell's contract, we quote from Howell's testimony, brought forward by appellant in his brief:

"When I turned this truck over to Wayland Gollehon, the Company paid him, but it was to come out of what the truck made —in other words, the truck earned two and one-half cents per cubic yard per quarter mile, and that included not only the truck but the salary of the driver. * * * When I was not driving the truck, I got two and one-half cents per cubic yard per quarter mile, less the driver's wages; Wayland Gollehon got the driver's wages— whoever drove it would have gotten the salary. In other words, the two and a half cents covered the total amount that was paid for the use of the truck and driver. I think they paid the driver thirty-five cents an hour, I am not sure. The bookkeeper gave Wayland Gollehon his check. I did not myself pay Wayland Gollehon anything for operating that truck. The bookkeeper of the defendant paid the difference between two and a half cents per cubic yard per quarter mile and the salary of the driver; the same bookkeeper that paid the driver his wages. * * * When I quit driving the truck, I turned it over to Wayland Gollehon there where they were loading the trucks.

"Q. Did anybody for the defendant do anything in the way of checking you out and checking the other fellow in? A. The bookkeeper took Wayland Gollehon's name. He checked him and checked me out. He did not do anything when he checked me out, but took Wayland Gollehon's name and he began driving. There wasn't anything done about the thirty hours.

"Q. Did he tell you anything about your thirty hours being up? A. I knew it was up, and I went to him with Wayland Gollehon. He just let Wayland Gollehon go to driving the truck, just asked him his name, and Wayland Gollehon drove the truck. I saw the truck again at Post, at my home; it had been brought in to my home. I had just one truck at that time. At the time of this hauling, I did not explain to Mr. Insull the fact that when my thirty hours were up I would get Wayland Gollehon to drive my truck. The first time I explained that to anybody was the morning of the accident. Wayland Golle-

hon had gone to that job before; he worked for them on the caliche job, driving a truck for his cousin.

"Q. You knew that the defendant did not have to accept Wayland Gollehon as a driver unless they wanted to? A. No, sir, I guess they would not have had to hire him unless they wanted to.

"Q. The Construction Company accepted or rejected whatever drivers they wanted? A. Yes, sir, I at least did go and ask the defendant to accept Wayland Gollehon as a driver. He was entered on the pay roll as driver of the truck and paid by the Company. I did not agree to pay Wayland Gollehon anything, and I did not pay him anything. * * * Whatever Wayland Gollehon got came out of the two and a half cents per cubic yard per quarter mile. * * * I mean they paid Wayland Gollehon thirty-five cents an hour, and paid me what was left out of the two and a half cents."

We make no conclusions on Gollehon's relation to appellee while he was on the job, hauling and delivering crushed rock for appellee, for the account of Mr. Howell; such conclusions would be immaterial because appellant was not injured while Gollehon was hauling and delivering crushed rock, but after he had finished his day's work and was on the road back to Post.

It is appellant's theory, brought forward by his assignments of error and propositions, that appellee "rented" the truck from Howell, that appellee was a "bailee" of the truck, and, quoting from his proposition, "there being no agreement between the bailee and the bailor as to where the truck was to be redelivered to the bailor, Gollehon, the driver of the truck for appellee, did not, as a matter of law, depart from his employment in returning the truck to the owner, so that the jury might have found this evidence that the employment of the driver had not terminated while he was returning the truck."

The evidence does not support appellant's theory of his case. Appellee had not "rented" Howell's truck; in appellant's own language, "So far as the use of the truck was concerned, Howell was an independent contractor." But whatever appellee's relation was to the truck it acquired no right of control, if it had a right of control, until the truck was delivered on the job. It was under no obligation or did it have the right to go to Post,

or to any other place, and take possession of the truck. If Gollehon was appellee's agent, it was a special agency to drive a truck owned by an independent contractor and put on the job by the owner in his capacity as an independent contractor. It follows beyond question that it was the duty of the independent contractor, Howell's duty, to deliver his truck on the job and, when the day's work was done, to take the truck off of the job. The compensation for the use of the truck, not the driver's services, necessarily included the cost of putting the truck on the job and of taking it off of the job. Had Gollehon called for the truck at Post and driven it to the job, he would have been Howell's agent, and not appellee's agent, up to the time he began work. Had Gollehon wrecked the truck on his way from the job back to Post, certainly Howell could not have held appellee responsible. So, as appellant was injured while Gollehon was in the employment of Howell, appellee was not responsible for his conduct.

The judgment of the lower court is affirmed.