## BURTON–LINGO CO. v. ARMSTRONG.

### No. 4879.

Court of Civil Appeals of Texas. Amarillo.

April 11, 1938.

Rehearing Denied May 9, 1938.

Thompson & Barwise and B. V. Thompson, all of Fort Worth, for appellant.

Boykin & Shirley and Brown & Brown, all of Fort Worth, for appellee.

JACKSON, Chief Justice.

The appellee, Mrs. Armstrong, surviving wife of P. C. Armstrong, deceased, for herself and as next friend of Carl and Lillie Fay, the two minor children of herself and the deceased, and acting as next friend for others, who, under the record, it is unnecessary to name, instituted this suit in the district court of Tarrant county to recover against the appellant, Burton-Lingo Company, a Texas corporation, damages in the sum of $50,000 on account of the injury and death of her husband, alleged to have been caused by the negligence of appellant, its agents, servants and employees.

The sufficiency of the petition to plead a cause of action or of the answer to allege a defense thereto is not challenged, and we think it only necessary to say that appellee predicates her claim for damages

on the allegations that the appellant had authorized P. W. Cassity, its agent, to act for it in unloading building material from railroad cars onto trucks and delivering it to the local yard at Odessa under the direction of its local manager; that P. W. Cassity was empowered to hire and discharge employees to assist him in doing this work and employed P. C. Armstrong and others to help him unload certain heavy timbers from a freight car onto a truck and trailer and haul them to and unload them at the local yard. The timbers were loaded onto the truck and trailer, carried to the yard, and, while unloading them, the deceased received injuries from which he died in a few days; that such injuries were caused by certain particular acts of negligence of the appellant which we will not state here as they are disclosed by the findings of the jury later set out.

The appellant denies that Cassity was its servant or agent for any purpose; that he had any authority to hire or discharge any of its employees; alleges that he was engaged in business for himself as a hauling contractor for whom the deceased was working, and as to appellant was an independent contractor with whom it had arranged to unload from the cars the material shipped to it, place it on trucks, carry it to and unload it into the local yard at Odessa for certain agreed prices.

In response to the special issues material to this appeal, the jury found, in effect, that the relation of independent contractor did not exist between appellant and appellee at the time deceased was injured, but that the relation of employer and employee did exist at such time; that the company failed to have the bolsters on the truck and trailer reasonably safe; that Cassity moved the end of the timber they were unloading just prior to the injury without giving the deceased time to get hold of the other end thereof; that appellant furnished the cant hook used by Armstrong at the time of his injury; that it was not reasonably safe for the purpose of unloading the timbers; and that each of such acts was negligence and the proximate cause of the injury of the deceased.

The jury found damages aggregating the sum of $12,500, which by the decree was proportioned to appellee and her two minor children, and of this judgment complaint is made.

The appellant presents as error the action of the court in refusing to direct a ver-dict in its behalf because it says the testimony shows, without dispute, that P. W. Cassity was not at any time its servant or agent, but was an independent contractor, by virtue of the provisions of the oral agreement in effect between appellant and Cassity long prior to and at the time of the injury resulting in the death of appellee's husband.

The appellant did not carry compensation insurance.

The facts disclose that appellant, the Burton-Lingo Company, is a Texas corporation engaged in buying and selling lumber and conducts twenty-five retail lumber yards in Texas, one of which is located at Odessa, and at each of these yards made contracts with others to haul and unload material, similar to the arrangements it had with Cassity.

The company had no trucks, equipment, appliances, or tools with which to unload and haul material from the railroad to the yard and no equipment with which to haul and deliver material sold to local customers. P. W. Cassity, who resided in Odessa, was in the trucking business, hauling for any one who desired his services. Mr. McMahon, the local manager, and Mr. Cassity, in 1930, entered into an oral contract by which Cassity agreed to unload from the railroad cars the material shipped to the company and deliver it to the yard and place it where he was directed. He was to receive, and did receive, $1 per thousand for lumber, $1 per ton for iron, wire and nails, $1 per yard for sand and gravel, 75 cents per ton for coal, so much for a square of shingles and for a pound of cement, etc. The agreement also provided for him to haul material from the yard to local customers when they ordered their purchase delivered and for this he kept a truck and a driver at the yard. The only material difference between the arrangement for such local deliveries and for unloading and hauling the material from the railroad cars was in the schedule of prices. Mr. Cassity agreed to and did furnish the trucks, tools, and equipment necessary to perform the work and to pay all the expenses of the trucks, gasoline, oil, and the repairs required. He hired and paid men to work for him for 40 cents per hour, and whether they worked one or more hours depended upon what he had to do, and when he saw fit to discharge them. This arrangement continued until 1933, during which time Cassity unloaded and delivered to the yard

of appellant approximately 100 carloads of material. At that time Mr. Moon succeeded Mr. McMahon as local manager at Odessa, with whom, by agreement, the oral contract theretofore made with Mr. Cassity was continued in effect on the same terms and conditions previously made, except the price for hauling lumber from the railroad was increased to $1.25 per thousand. The contract did not require Cassity to work for such company exclusively nor was it obligated to give all of ·its hauling to him, however, he did practically all of its hauling at Odessa. The time the agreement was to continue was not fixed and could have been terminated by either party at any time. From 1930, when the arrangements were made, until 1933, when the contract was extended, Cassity had similar agreements for hauling with the Oil Field Lumber Company at Odessa, the Pickering Lumber Sales Company, and hauled by the trip for the Sunshine Iron Works, the Atlantic Oil Company, the Humble Oil Company, Fred Turner, and probably others. From 1933 to the date of the trial, in addition to hauling for appellant and some of the parties above named, he hauled for Fox Lumber Company, M. B. Thompson, Mr. Matthews, Sunshine Company, Devonian Oil Company, Western Windmill Company and others, some of whom were operating in competition with the Burton-Lingo Company, whose yard was about one-half mile from the railroad tracks. The details of the hauling were done under the direction of Cassity; the company did not instruct him how many truckloads to make out of a carload of material, the amount to be carried at a load, the length of time to be consumed in unloading material from the ʄailroad car and transferring it to the yard, the hours his men should work, or the price he should pay them, the route or the speed at which the trucks should travel, but did inform him where material should be placed in the yard and where and to whom material for local customers should be delivered. After a car was placed on the track and he was informed thereof, if not unloaded in time to prevent demurrage, he was liable therefor. If hauling for some other customer, the company had no authority to and did not require him to stop before he finished for such other customer and do its hauling, but, when unloading a car of material for the company, it sometimes directed that he or his men quit and deliver material to some local customer

or return to the yard material for which such customer was entitled to credit, and twice he had been instructed to deliver material to a local customer direct from the railroad car. He delivered to local customers only when the purchaser requested the company to deliver the material, and at such times the drayage was charged by the company to such customer, collected by it and paid to Cassity. He had, a few times while actually busy for the company, accepted employment from some other customer to which appellant made no objections. The company at no time had trucks or equipment with which to do its hauling, furnished none to Cassity, and never employed or discharged any of the men who worked for him.

Mr. Smith, the man kept at the yard with a truck to deliver material, when not engaged in making local deliveries or assisting Cassity in unloading material from the cars, sometimes of his own accord helped the yardmen stack lumber, but received no pay therefor and never assisted in loading the truck of any customer except when not hired by Cassity but hired and paid by the company for such work.

Cassity, a few times, assisted the yardmen to remove material from a bin in the yard when he had a load of new material to place in such bin and helped in putting the removed material in some other place; he had, now and then, assisted, when not busy, in loading the truck of a purchaser who was doing his own hauling; at the request of the yardmen, he occasionally advised them what lumber to substitute for something ordered but was not in stock; he was consulted by Mr. Moon when he came in 1933 about the credit standing of two or three customers; had, a few times, waited on a customer if the price of the item was not over a dollar and there was no employee of the company present to make the sale.

Mr. Cassity testified: "John Porter always wanted me to wait on him and get his lumber or materials out after he had made out his bill for materials in the office with some of the office men."

Mr. Ellis stated that he had seen Mr. Cassity a few times figure small lumber bills. He did not remember the name of the party, the quantity of the lumber, or price paid therefor; he saw none of the figures or words on the paper, but based this statement on a conversation he claimed

to have heard in which Cassity advised what lumber would be best for something, the price, and the cheaper kind to be used.

The physician who treated deceased for his injuries stated that Mr. Moon informed him that the company was not responsible for the hospital or medical bills incurred but would see they were paid by Cassity, and the record shows the bills were satisfied, partly in money and partly by hauling, by Mr. Cassity.

The instruction given by appellant to Cassity relative to unloading material from the cars and placing it in the yard and to discontinuing such work until he could make local deliveries or return material for which a customer was entitled to credit or to delivering to local customers direct from the freight car were contemplated by the agreement between appellant and Cassity. Mr. Smith, the driver kept at the yard with the truck to make local deliveries to the customers, is the only man hired by Cassity that helped any one hired by the company to do any work not contemplated, and this was without request, voluntary and without pay. The services rendered by Cassity to appellant, not covered by the agreement, occurred at intervals over a period extending more than five years and such service was gratuitous and without remuneration.

The company did not control the details of the work, did not direct the amount of material to be hauled at a load, the number of loads to be made, the length of time to be consumed in unloading either the freight cars or the trucks, the hours Cassity or his men should work, the price he should pay his help, the route or the speed at which the trucks should travel, nor did it pay any of the expenses for trucks, equipment, tools, oil, gas, repairs, or men, incurred in performing the work.

On the day before the deceased was injured, the company advised Cassity that there was a car of material on the railroad track which it wanted unloaded and placed in its yard. Cassity saw the deceased and his kinsman, Mr. Ellis, and employed them to assist him to unload the material from the freight car on the following day. When the truck and trailer reached the lumber yard with material, the local manager instructed Mr. Cassity where to put the timber and how it should be stacked. While unloading the material from the truck and trailer, the deceased received the injuries which resulted in his death.

Under the testimony, the company did not make use of its privilege to terminate the contract in order to enforce any control not permitted by the terms thereof over Cassity or his men, without the exercise of which privilege this right would not of itself prove that Cassity was an employee of the company. Gall v. Detroit Journal Co., 191 Mich. 405, 158 N.W. 36, 19 A.L.R. 1164. Since there was no time agreed upon for the termination of the contract, it could have been ended at any time by either party, and the privilege of an employer to terminate a contract with an independent contractor is not identical with the right to discharge an employee. Dave Lehr, Inc., v. Brown et al., 127 Tex. 236, 91 S.W.2d 693. Such right, while not conclusive, was a circumstance to indicate that Cassity was an employee, as the facts that the amount of the work to be done was indefinite, and was paid so much per yard, per thousand, per ton, etc., for the hauling, were circumstances to show that he was an independent contractor. 14 R.C.L. pp. 74, 75, par. 11; J. W. Zempter Const. Co., Inc., v. Rodgers, Tex.Civ.App., 45 S.W.2d 763. Every act of any probative force relied upon by appellee was rebutted by undisputed testimony.

The fact issues pertaining to the negligence found by the jury are not here contested, and it follows that, if Cassity was an employee of appellant at the time the deceased received the injuries, which resulted in his death, the company would be liable in damages.

We shall not undertake to harmonize the seeming divergence of the decisions of the courts on the question of when the existence of the relationship of servant or of independent contractor is an issue of fact to be submitted to the jury or an issue of law to be determined by the court, however, we are convinced that such seeming divergence arises from a difference of fact rather than law.

In Smith Bros., Inc., v. O'Bryan, 127 Tex. 439, 94 S.W.2d 145, the issue was whether G. E. Henson was an employee of Smith Bros. or acting as an independent contractor. The particulars urged to show he was an employee are stated to be, in effect, that Smith Bros. had the right to instruct Henson what particular material should be hauled, where it should be loaded and unloaded, how many truck drivers he should use, fix the rate of pay; while there was no agreement that

Henson should work for any particular length of time, nor complete any particular job, if he did not come when requested or left without permission, Smith Bros. could refuse him further work; they required the trucks and equipment and drivers used by Henson to be satisfactory; their employees assisted in loading the trucks, and their foreman directed where to unload the material; they did not select the route for nor the speed of the trucks, but the drivers were expected to deliver the material promptly to effectuate the purpose of its use. Commissioner German, in an able opinion in which an extensive collation of authorities is made, concluded that Smith Bros. were entitled to a peremptory instruction and reversed and rendered judgment in their behalf. We think the testimony in the case at bar shows that Cassity had greater discretion over the manner and method of doing the work, greater authority over the complete details thereof, and greater control over his men than did Henson in Smith Bros., Inc., v. O'Bryan, supra.

In Cocke & Braden et al. v. Ayer, 106 S.W.2d 1043, in answer to a certified question, the Supreme Court, speaking through Commissioner Hickman, held that the owner of a truck, who agreed with contractors to haul material from the gravel pit to be used on the highway for improvements at an agreed price per load, but whose trucks and drivers were not under the control or direction of the contractors except as to the place from which the material was to be hauled and the destination thereof, was, as a matter of law, an independent contractor. This conclusion is based on the following cases: Dave Lehr, Inc., v. Brown, supra; Smith Bros. v. O'Bryan, supra; Riggs v. Haden Co., 127 Tex. 314, 94 S.W.2d 152, and others he cites.

In addition, see, also, O'Briant v. Lone Star Const. Co., Inc., Tex.Civ.App., 109 S.W.2d 1021; Peyton Packing Co. v. Collis et al., Tex.Civ.App., 110 S.W.2d 625; Southern Surety Co. of New York v. Scheel et al., 125 Tex. 1, 78 S.W.2d 173; Traders & General Ins. Co. v. Jones et al., Tex.Civ.App., 95 S.W.2d 189.

In deference to the law announced by the above authorities, we hold that on the issue of independent contractor the appellant was entitled to an instructed verdict.

█ The appellee contends that, should it be held that Cassity was an independent contractor, the judgment of the trial court should, nevertheless, be affirmed because the jury found appellant had furnished the deceased with a defective cant hook for use and that such defect was a proximate cause of the injury.

Cassity, according to the testimony, was to and did furnish cant hooks for the use of his men in hauling heavy material, and appellant was under no obligation to furnish trucks or tools; however, there was a cant hook at the yard which the company had borrowed from J. W. Price, and it, as well as the cant hooks belonging to Cassity, were sometimes used by the yardmen of appellant. These cant hooks when not in use were put in a tool shed. The day the deceased was injured, he and his cousin, Mr. Ellis, got three cant hooks from the tool shed and placed them in the truck, one of which was the cant hook that had been borrowed and the one used by the deceased on the day he was injured. About two months prior to the injury, the deceased said to Mr. Moon that the cant hooks were dull and giving them considerable trouble and asked why he didn't have them fixed, to which Moon replied he was going to order some new ones. No officer or agent of the company ever instructed, directed, or gave permission to the men working for Cassity to use a cant hook, nor gave the deceased or Ellis permission to get the cant hooks on the morning of the injury, but they without consent placed the cant hooks on the truck. The most favorable interpretation of the testimony does not warrant the conclusion that appellant furnished the cant hook to the deceased. It had only permitted a simple tool in a defective condition to be on its premises where it could be taken and used.

█ If we are correct in holding Cassity was an independent contractor, the primary duty was his to furnish safe tools to his employees, and appellant would not be liable for the condition of the cant hook unless it was so defective as to make its use in connection with the work inherently dangerous. Southern Oil Co. v. Church, 32 Tex.Civ.App. 325, 74 S.W. 797, 75 S.W. 817, writ refused; Montgomery v. Garza, Tex.Civ.App., 290 S.W. 210; Ray v. St. Louis Southwestern Ry. Co. of Texas, Tex.Civ.App., 289 S.W. 1030, writ refused; L. E. Whitham Const. Co. v. Wilkins, Tex. Civ.App., 90 S.W.2d 916; Moore et al. v. Roberts et al., Tex.Civ.App., 93 S.W.2d 236, writ refused.

There is no pleading, no testimony, and no finding of the jury to the effect that

the work in which the deceased was engaged or the use of the defective cant hook in connection therewith was inherently dangerous. Heating and hauling asphalt and applying it to a roadbed is not inherently dangerous. · L. E. Whitham Const. Co. v. Wilkins, supra. Hauling lumber and material with a motortruck is not intrinsically dangerous. Moore et al. v. Roberts et al., supra. In view of these conclusions, it is unnecessary to discuss the other assignments.

The judgment of the trial court is reversed and here rendered.