The Fisher Body Co. *v.* Wade.

(Decided February 20, 1933.)

Messrs. Tolles, Hogsett & Ginn, Mr. T. O. Nevison and Mr. G. Ray Craig, for plaintiff in error.
Messrs. Boggs & Chase and Mr. C. B. Thornton, for defendant in error.

LLOYD, J.  Marie E. Wade, plaintiff in the Court of common pleas, applied to the Industrial Commission of Ohio for compensation for the death of her husband, Wilbur E. Wade, and the commission denying her right to participate in the state insurance fund she appealed to the court of common pleas, where, a jury being waived, a finding and final order was entered in her favor against the Fisher Body Company, plaintiff in error, which under the Workmen's Com-

pensation Act was a self-insurer. For brevity we will refer to the plaintiff in error as Fisher and to the dedendant in error as plaintiff. By these proceedings in error Fisher seeks not only a reversal of the final order of the court of common pleas, but the entry of a final judgment in its favor, a motion therefor having been made in the trial court at the conclusion of all of the evidence produced at the trial.

Fisher was at the time of the acts and occurrences involved in the instant case engaged in the manufacture of automobile bodies in the city of Cleveland. Cushion springs required for these bodies were manufactured in and shipped from Detroit to the Cleveland plant. Prior to 1925 these shipments had been made by rail. In that year Fisher contracted verbally with the A. J. Smith Trucking Company of Toledo, hereinafter called Smith, for the hauling by truck of these cushion springs from the L. A. Young Industries Company in Detroit to Fisher in Cleveland. Smith was a partnership consisting of A. J. Smith and his son Howard, and was engaged in long-distance trucking. The partnership owned only one truck and employed one man to operate it, paying him weekly wages. Smith being unable to carry out his contract with Fisher with this one truck kept a list of individual truck owners, and when there was necessity therefor would arrange with one or more of them to haul a load of springs from Detroit to Cleveland. On the 9th of September, 1925, and for varying lengths of time prior thereto, there were five individual truck owners hauling springs for Smith from the L. A. Young Industries Company in Detroit to Fisher at Cleveland. Among them was Wilbur E. Wade, who on September 9, 1925, while on the way to Cleveland with his truck and trailer loaded with springs consigned to Fisher, struck a culvert in the road causing the truck and trailer to turn over into a ditch. Wade received injuries from which he died on September 21,

1925, leaving as dependents his widow, Marie E. Wade, and several minor children.

All of these truck owners understood, and it was a fact, that none of them was bound by any definite contract with Smith to haul freight "except as they accepted the employment for each particular load," and the evidence is equally conclusive that no obligation, nor any contract of employment, extended beyond each load of cushion springs transported from Detroit to Cleveland. No time was fixed for leaving Detroit or for arriving at Cleveland, but if a load was delivered at Cleveland before 9 o'clock in the morning of the day after the loading of the springs at Detroit, $5 in addition to the stipulated price per load was paid, and if delivered after that time, $5 was deducted therefrom. The payments for springs delivered were made directly by Fisher to Smith, and Smith in turn paid the truckman 75 per cent. of the amount so received for each truckload of springs delivered by him at Cleveland. Each truck owner paid for all necessary repairs and all expenses incident to the operation of his individually owned truck, including oil and gasoline, and paid for fire and theft insurance. Smith procured cargo insurance on the shipment of cushion springs, the premium therefor being charged to the truck owners and paid by them, each policy of insurance providing that any loss not exceeding $25 would be paid by the truck owner. The initial payment for the insurance was made by Smith. "The insurance premium was figured on the basis of the amount received for the hauling of the freight, and this was pro-rated among the truck owners according to the amount which they received for hauling the freight."

Howard Smith testifies without denial by any of the other witnesses that "these truck owners had a right to haul on the return trip from Cleveland freight from any one they saw fit to haul for without any obligation to The A. J. Smith & Sons Trucking Company," and

the evidence indisputably shows that when they did haul other freight they made their individual arrangements therefor and retained the compensation charged for the service. Owners of trucks hauling spring cushions from Detroit to Cleveland were required to register in books furnished by Smith at three places located on the main highway between Toledo and Cleveland, viz., Biddle's gas station near Genoa, the Monroeville Oil Company, at Monroeville, and at L. E. Crist's, between Kipton and Oberlin, so that, as Howard Smith testifies, Smith or Fisher "or any other company might check upon the drivers as to where the shipment was." On each trip each truckman registered his name, the character of the load, and the times of arrival and departure. Howard Smith used his own automobile to drive "along the highway between Detroit and Cleveland to see that the freight which was being handled by said truck owners was being properly handled and transported," and would "sometimes stop and talk with the drivers, at other times checking over the books provided at the stations above mentioned to see when the drivers arrived," but there is no evidence that he undertook to or did give any of them orders as to what to do or not to do; nor that he assumed any direction or control over the actions or conduct of any of them. A witness named Soldier testified that "he was in the employ of Smith" for a period of two years immediately prior to and after the injury and death of Wilbur E. Wade, and that while he was so engaged "he hauled cushion springs from The A. L. Youngs Industries Company in Detroit" to Fisher in Cleveland, and "during the time he was so employed he hauled freight for no other persons, firm or corporation;" but he also says that occasionally after delivering a truckload of springs to Fisher he would be given some freight by Fisher to deliver in Detroit, and that on several occasions prior to September 9, 1925, after delivering a load of springs

to Fisher, he hauled truckloads of cushions from Fisher to the Maxwell Motor Corporation of Detroit, under instructions from Smith. At the trial it was stipulated that each of three other witnesses would similarly testify with minor variations as to dates and numbers of trips, and another witness, Pfaff, testified that he hauled cushion springs from Detroit to Fisher in Cleveland from about September 21 to December 3, 1925, and that during that time he hauled "a lot of bodies for Smith from Warren, Ohio, to the Wills-St. Claire at Marysville" and a load of castings for himself. The record does not clearly show how long Wade was engaged in the hauling of cushion springs, but Mrs. Wade testifies that he usually made two round trips a week between Detroit and Cleveland, and that he made eleven trips in all. Nor does the evidence disclose how many loads of springs any of these truck owners, except Wade, transported from Detroit to Cleveland, except such inference as may be drawn from Soldier's statement that "during the time he was so employed he hauled freight for no other persons, firm or corporation." As to the others we know only that each of them hauled cushion springs from Detroit to Cleveland on the same basis as Soldier, and, with the exception of Pfaff, that they and Soldier were so engaged at the time Wade was injured.

Fisher was an employer of more than three workmen, and by compliance with the Workmen's Compensation Act was a self-insurer, whereas Smith had failed to comply therewith on the assumption that it did not have "in service three or more workmen or operatives regularly" in its business, and the right of plaintiff, therefore, to an award of compensation under the Workmen's Compensation Act depends upon whether the facts disclosed by the evidence fall within paragraph 3 of Section 1465-61, General Code, which provides that every person in the service of any independent contractor or subcontractor who has failed to

pay into the state insurance fund the amount of premium fixed and determined by the Industrial Commission shall be considered as the employee of the person who has entered into a contract with such independent contractor, unless such employee or other legal representative or beneficiaries elect, after the injury or death, to regard such independent contractor as the employer.

The primary question, then, which confronts the court is whether on September 9, 1925, Smith had in its service three or more employees, within the meaning of the Workmen's Compensation Act.

It has been repeatedly held that this act is to be liberally construed to effect its intended objects and purposes, but admittedly only those persons who are included within its terms and conditions are entitled to the benefit and protection thereof, and their status is to be determined by the common-law distinction between employee and independent contractor. The test for determining whether one person is an employee of another is whether the alleged employer has the right to exercise control over the other as to the work he has undertaken to do. "The control of the work reserved in the employer which makes the employe a mere servant is a control, not only of the result of the work, but also of the means and manner of the performance thereof; where the employe represents the will of the employer as to the result of the work but not as to the means or manner of accomplishment, he is an independent contractor." 14 Ruling Case Law, 68, Section 4.

The facts in the instant case are not in dispute and definitely show that the contracts of employment between Smith and these truck owners were in all respects alike, none of them continuing beyond the carriage of a single load of cushion springs from Detroit to Cleveland. Each owned his own truck, bore the expense of maintenance, bought the necessary oil and

gasoline to operate it, furnished fire and theft insurance thereon, and by the terms of the contract also paid the premiums on the insurance on the cargo carried. Each had the right, at the conclusion of a trip, to do as he pleased, to return to Detroit for another load, or not, as he chose, and to carry other freight for other persons, as occasionally was done.

The evidence does not disclose that any orders or directions were at any time given by Smith to any of them as to what route should be taken, at what speed they should proceed, when leave Detroit or at what time arrive in Cleveland, except the contractual obligation to register at three designated places, and the monetary inducement to arrive in Cleveland by a certain time. The contract of carriage terminated with the arrival at Fisher's in Cleveland. The carriage of each load was a separate transaction, and either Smith or the truck owner could maintain an action for breach of the contract with respect thereto. It may be pertinent to ask whether Smith would be liable therefor, if Wade, instead of himself being injured, had negligently collided with another automobile and as a proximate result of his negligence an occupant thereof had been injured. It seems obvious to us that each of these truck owners was an independent contractor and not an employee or workman within the scope and meaning of the compensation act.

Having arrived at this conclusion, this court is required to reverse the judgment of the court of common pleas and render final judgment for the plaintiff in error, which is accordingly done.

*Judgment reversed and judgment for plaintiff in error.*

RICHARDS and WILLIAMS, JJ., concur.