## INDUSTRIAL COMMISSION v ARNOLD

Ohio Appeals, 7th Dist, Mahoning Co

Decided April 15, 1935

J. W. Bricker, Columbus, H. Mitchell, St. Clairsville, and Henry Church, Youngstown, for plaintiff in error.

Peter Betras, for defendant in error.

**412**

**OPINION**

By CARTER, J.

Two questions are presented to this court for determination: First, under the evidence in this case, was the plaintiff below an employe of the Youngstown Motor Freight Company, Inc., at the time that he received the injuries of which he complains; and Second, if so, was he engaged in the course of his employment at the time? It is claimed by the defendant below that the plaintiff was not an employee but an independent contractor, and it is also claimed by the plaintiff in error that the injury which he sustained at the time did not occur in the course of his employment.

First, was the plaintiff an employe of the Youngstown Motor Freight Company, Inc., at the time of the injury? §1465-61 GC, defines an employe as follows:

"The term 'employe' shall be construed to mean every person in the servce of any person, firm or private corporation, including any public service corporation, employing three or more workmen or operatives regularly in the same business, or in or about the same establishment under a contract of hire, express or implied, oral or written, including aliens or minors, but not including any person whose employment is but casual and not in the usual course of trade, business, profession or occupation of his employer."

To aid in the determination of this question, we must look to the evidence and from the evidence determine the contractual relationship existing at the time between these parties. There was no written contract between the parties, except that the plaintiff testifies that a certain typewritten paper was handed to him and he was told to take it home and read it over, and he testifies that nothing further was said at that time; that he, the plaintiff, took the contract home, but says that he only read the contract as far as the wages or pay was concerned, that the rest of it he never read, and stated that the contract provided that the company took 33½% and he to have 66½% for his services. This written instrument was not put in evidence. However, the plaintiff further testified that he proceeded to haul goods, and stated as to what he did under this arrangement. In substance, he testified that he was called down to the defendant's place of business and went in and asked them where the load was and where it was supposed to go, and they told him, and he loaded it on the truck and went to Canton and was instructed as to what should be done with this freight by the company, and he further testifies that nothing was said at that time about how much he would be paid; that he was instructed to collect bills marked "Driver collect," and he testified also that when he left he was instructed if there was any freight to be brought back, to bring it back to the company's place of business, and that they gave him a list of manufacturing plants over at Canton where he was to stop, and that they further instructed him as to what was to be done with that freight, that the money he collected was to be turned in to the company unless needed for expenses. He also testified that the contract was that he was to

have a job as long as there was business enough; that no definite length of time was stipulated, and he further testifies that he was to go to various places, Pittsburgh, Erie and Warren, for the purpose of transporting freight. Instructions were also given to him as to the manner in which he was to handle the freight; that if there was anything breakable he was cautioned to be careful in loading and unloading; that he had no license himself from the Public Utilities Commission, but that the Youngstown Motor Freight Company, Inc., had the license on his truck. He also testifies that he was instructed as to what should be done in case of a breakdown of the truck, and says that he was told in such an event to call the office; that he had a breakdown on the trip to Pittsburgh, he called the office and they told him to have it fixed and O.K. the bill and they would send a check for it to the garage; that on the day he was injured he testified that he had been to Canton and was coming home, and that he had been instructed to go to Canton on this day and that when he was on the way back the steering gear of his truck broke, at or near Sebring, and that at that time he had freight on his truck; that he called the Youngstown office and they told him that they would send another truck over after the freight and to get the truck fixed and come on it.

Inquiry was also made of the plaintiff as to whether he carried any insurance on the truck while he was working for the Youngstown Motor Freight Company; that is, property or liability damage, and he answered, "I did have at the time I went to work, but after I found out they carried it, I dropped mine"; testified that the company carried liability insurance upon his truck; that it took out the policy, and that he never had the policy in his possession. He also testifies that the company gave him instructions as to what routes to take while hauling the freight, instructed him as to the avoiding of towns because of traffic, and to go around towns, and even instructed him with reference to going over certain streets, and he testifies that while he was employed by the Youngstown Motor Freight Company he did not work for anyone else, and that he was subject to call at any time from them and that he was cautioned as to speed and over-loading, and was also instructed as to the carrying of two red lights on the truck.

He testified on cross examination that he was buying his own gas and oil and maintaining his truck, and that this was paid out of whatever he earned on commission, and that when money was paid out for break-downs, that the amounts of those repair bills were deducted from his 66½%, and that he was charged with this on final settlement.

The above testimony, which is not disputed, indicates the arrangement under which these parties operated. Was the plaintiff an employe of the company or an independent contractor, or was it at least a question of fact for the court, acting as a jury, to determine? If as a matter of law plaintiff was not an employe, then and in that event there was nothing to submit to the court, acting as a jury, and the court would be in error in finding for the plaintiff. However, if under the contract in this case, it became a question of fact for the court to determine, then and in that event the finding would have to be manifestly against the weight of the evidence before a reversal could avail. The general rule in this country and in this state appears to be that whether one is an employee or not depends upon whether the employer has or has not retained power of control or superintendency over the employe.

In 28 R.C.L., p. 762, the author uses this language:

"In a great many cases the question has been presented as to whether a claimant under the statute was at the time of the calamity acting as the workman or employe of the employer, or whether he was engaged as an independent contractor. The distinction between the relationships has long been recognized by the law, and a rule of definition has met with general acceptance. One who contracts with another to do a specific piece of work for him, and who furnishes and has the absolute control of his assistants, and who executes the work entirely in accord with his own ideas, or with a plan previously given him by the person for whom the work is done, without being subject to the latter's orders, in respect of the details of the work, with absolute control thereof, is not a servant of his employer, but is an independent contractor. This is the common law definition and it embodies the rule applicable under the statutes, inasmuch as the acts do not attempt any definition. The test is to be found in the fact that the employer has or has not retained power of control or superintendence over the contractor or employe. An independent contractor, then, as defined above, is not entitled to be compensated under the statute, for the reason that he is not a workman. But while the

courts are agreed in respect of the expression of the general rule, the results reached in its application to particular cases are often of the most contradictory sort. Undoubtedly, much latitude must be conceded to the infinitely varying facts and circumstances, which distinguish and characterize the relation of the parties, but with all due allowance, it appears that the decisions have very often been in direct conflict. Thus, precedents may be found both for and against the proposition that the statute is inclusive of persons who are engaged as piece workers, commission men, profit sharers, contractors having assistants in their employ, groups of workers acting under their own foremen, and many others whose engagement resembles that of the independent contractor. Likewise, there is a sharp conflict as to whether the employe of a contractor is to be considered an employe of the principal employer, a majority of the courts taking the view that he is not. The truth is that the surrounding facts are so variable in this class of cases that it is difficult, if not absolutely impossible, to find any two that are on all fours. Many cases are plainly on one side of the equation, and may be readily classified as showing the relation of master and servant; others are just as plainly to be deemed cases of independent contract; while the middle ground is traversed by still other cases that pass by imperceptible stages, from one side to the other. In this situation the principle of stare decisis is of doubtful value. Great latitude should be allowed the finder of facts and a decision should not be interfered with unless it very plainly does violence to the established rule. Inasmuch as the statute is to be liberally interpreted, a finding that the applicant was an employe, and within the protection of law, should not be lightly reversed."

26 R.C.L., paragraph 8:
"In the relation of master and servant the principal selects the servant with a view to his skill and care, and not only retains control over all his operations, but also has the power to dismiss him at any time for misconduct. In the relation of employer and contractor, the contractor leaves the employer no control over the work or the persons by whom it is executed, but simply the right to require the thing produced, with the result attained, to be such as the contract has provided for. The mere fact that persons performing work for another are paid by the piece or job, does not necessarily negative the existence of the master and servant relation and establish that of independent contractor."

In the case of **City of Tiffin v McCormack, 34 Oh St, 638,** the second paragraph of the syllabi is as follows:
"The owner of a stone quarry hired a person to go into the quarry, quarry stone therein, break the same to a certain size, and pile them up so they can be measured, and had no other or further control over the employe, who was to furnish and find the gun powder and other tools, and receive compensation at the rate of one dollar per perch; and the employe, by blasting with gunpowder, destroyed the buildings of an adjoining proprietor: Held, that the employer is liable for the injury inflicted by the employe."

And on page 643 the court says:
"It appears to us to have been an ordinary contract for work and labor, which creates between the employer and employed, the relation of master and servant, within the meaning of the law in regard to that subject. It is true that the service, namely, the quarrying of stone in the employer's quarry, was to be done by the use of powder and tools furnished by the employe; but this condition in the contract did not affect the legal relation between the parties. It was significant only as a matter affecting the rate of compensation."

In the case of **Fisher Body Co. v Wade, 45 Oh Ap, 263, (14 Abs 44)** the syllabi is as follows:
"1. Status of persons claiming benefit of compensation act must be determined by reference to common law distinction between employe and independent contractor.
2. Where alleged employer reserves right to control not only result of work but means and manner of performance, person doing work is employe, but where person doing work represents alleged employer's will merely as to result, but not as to means or manner of accomplishment, he is independent contractor."

In the case of **Industrial Commission of Ohio v Laird, 128 Oh St, 617,** the syllabi is as follows:
"1. The law indulges no presumption that an employe is either a servant or an independent contractor, and the burden is upon the party having the affirmative of the issue to show the relation to be such as to entitle him to recover.
2. Where claim is made by a party injured that at the time of the injury he was such an employe as contemplated by the workmen's compensation law, and thereby

entitled to participate in the state insurance fund, and the Industrial Commission makes the one issue that at the time of injury he was not an employe but an independent contractor, the burden is upon claimant to prove by the greater weight of the evidence that he was such employe at the time of injury.

3. In such case, the question as to whether the claimant at the time of injury was an employe or an independent contractor, is a question of fact, and if claimant offers some testimony tending to prove that at the time of injury he was an employe, the issue should be submitted to the jury, under proper instructions, and failure to do so constitutes prejudicial error.

4. The vital test, in determining whether a person employed to do a certain work is an independent contractor or a mere servant, is the right of control over the work reserved by the employer."

It will be observed in the third paragraph of the syllabi that the court held if claimant offers some testimony tending to prove that at the time of injury he was an employe, the issue should be submitted to the jury, under proper instructions, and failure to do so constitutes prejudicial error.

Under the subject of "Master and Servant," 39 C.J., p. 1361, the author says:

"Accordingly, if the facts present no conflict and furnish the basis for a single inference, and that favorable to the master, his freedom from liability is to be determined by the court as a question of law. On the other hand, if there is a conflict in the evidence, or more than one inference can be drawn from it, the liability of the master is to be determined by the jury. If the evidence is conflicting or more than one inference can be drawn therefrom, it is for the jury to determine whether the relation of master and servant existed at the time of the injury and whether the servant was acting within the scope of his employment at the time of injury."

We might further suggest that a very exhaustive discussion of this subject is found in 19 A.L.R., 1168.

A perusal of the evidence indicates that in the case at bar the defendant did exercise control over the plaintiff and to the extent that in the opinion of this court it resolved itself into a question of fact for the trier of facts to determine. The court, as trier of the facts in this case, found for the plaintiff, and we are not inclined to disturb that finding as being contrary to law or against the manifest weight of the evidence on the question as to whether the

plaintiff below was an employe or an independent contractor. See also **31 Oh Ap, 470.**

Now, as to the second question: At the time of his injury was plaintiff in the course of his employment? §1465-68 GC, provides, in part,

"Every employe mentioned in §1465-61 GC who is injured, and the dependents of such as are killed, in the course of employment, wheresoever such injury has occurred, provided the same was not purposely self-inflicted, on or after January 1, 1914, shall be paid compensation out of the state insurance fund."

The plaintiff testified, and there is no testimony to the contrary, that on the day in question he had gone to Canton under instructions from the Youngstown Motor Freight Company; that on this day he had an accident; that the steering gear of his truck broke, near Sebring; that he had freight on the truck at that time; that he called the Youngstown office and the officials stated they would send another truck over after the freight, and to get the truck fixed and to come in; that he did as he was instructed, and while assisting in the repair of the truck, which was taken to a garage, that a piece of steel flew and hit him in the eye, resulting in the loss and removal of one of his eyes. Was this in the course of his employment? The transportation company was interested in the ability of the plaintiff to transport goods expeditiously when called upon so to do. It instructed him, when the breakdown occurred in Sebring, that they would send another truck over after the freight, and for plaintiff to get the truck fixed and come on it, and assisting in the repair of the truck he was injured. Now, the injury of which he complains, in order to be compensable, and, as held in **39 C.J., p. 1361,** such ordinarily is a question of fact for the jury to determine. Our statute makes no provision for injuries arising out of and in the course of employment, but is limited to injuries occurring in the course of employment. In Corpus Juris the author uses this language:

"It has been said that in general terms an injury to an employe arises in the course of his employment when it occurs within the period of his employment at a place where he may reasonably be and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental to it."

Another definition which has been approved by the courts is that an injury arises

in the course of employment when it arises within the period of employment and at a place where an employe may reasonably be and while he is reasonably fulfilling the duties of his employment. Another, an injury is received in the course of employment when it arises while the workman is doing the duty which he is employed to perform. Let us suppose that something had gone wrong with the motor on one of these trips in which plaintiff was at the time conveying goods, and he attempted to fix it, and in so doing he was injured, could it be said that such was not in the course of his employment? Hardly so. It was a part of the contract of employment that plaintiff was to repair and maintain his truck.

In the case of **Industrial Commission of Ohio v Weigandt, 102 Oh St, 1,** the second paragraph of the syllabi is as follows:

"The test of right to award from the insurance fund under the workmen's compensation law, for injury in the course of employment, is not whether there was any fault or neglect upon the part of the employer or his employes, but whether the employment had such causal connection with the injury, either through its activities, its conditions or its environments."

"The provisions of the law do not cover an injury which had its cause outside of and disconnected with the business in which an injured workman was employed."

In the case of **Industrial Commission of Ohio v Ahern, 119 Oh St, 41,** the second paragraph of the syllabi is as follows:

"Under §35, **Article II, of our Constitution,** and the law enacted pursuant thereto, the phrase 'in the course of employment,' connotes an injury sustained in the performance of some required duty, done directly or incidentally in the service of the employer. An employe who is injured when engaged not in the service of an employer but in pursuance of the employer's private and personal business, is not entitled to compensation under the workmen's compensation law."

In the case of **Industrial Commission of Ohio v Weaver, 45 Oh Ap, 371, (11 Abs 638; 15 Abs 448)** the fourth paragraph of the syllabi is as follows:

"4. Employe's injury arises out of and is connected with employment when there is causal connection between employment and injury."

The fifth paragraph of the syllabi is as follows:

"5. To authorize compensation, direct causal connection need not exist between employment and injury."

In the case of **Industrial Commission of Ohio v Bateman, 126 Oh St, 279,** the second paragraph of the syllabi is as follows:

"In order to avail himself of the provisions of our compensation law the injuries sustained by the employe must have been 'occasioned in the course of his employment.' Such injuries must be connected with the operation of the employer's business, either on the premises or within its immediate environs; or, if the injuries are sustained elsewhere, the employe, acting within the scope of his employment, must, at the time of his injury, have been engaged in the promotion of his employer's business and in the furtherance of his affairs."

Under all the circumstances and the evidence as disclosed by the record, this court is not in a position to say as a matter of law that the employe at the time of his injury was not in the course of his employment. True, it was in furtherance of the business of the employe to have his truck repaired, and it is also true that it was in the interest of the Youngstown Motor Freight Co., Inc., to have it repaired. This plaintiff was employed to haul the merchandise for the company. The company secured the goods to be hauled and plaintiff hauled them. He was to receive for his services 66 2/3% of the receipts. To receive this compensation he was to furnish and maintain the truck, haul the goods and furnish the gas and oil.

We are unable to agree with counsel that the fact that plaintiff was to furnish the oil, gas, truck and maintain same, placed him outside of the course of his employment, by reason of the fact that he was injured while repairing the truck. As said in the **34 Oh St, 643,** "It is significant only as affecting the rate of compensation." The court found that plaintiff was an employe of the company at the time of the injury, and also that he was in the course of his employment. This finding was not contrary to law nor against the manifest weight of the evidence. Reaching this conclusion, the lower court is affirmed.

Judgment affirmed.

NICHOLS, J, concurs.

ROBERTS, J, dissents.

ROBERTS, J:

The defendant was not injured in the course of his employment.