KEEFER, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

(Decided May 2, 1938.)

Mr. *Earl S. Miller,* for appellee.

Mr. *Herbert S. Duffy,* attorney general, and Mr. *Eugene Carlin,* for appellant.

OVERMYER, J. In the Common Pleas Court the claimant, Chas. H. Keefer, recovered a verdict and judgment entitling him to participate in the Workmen's Compensation Fund because of injuries sustained on February 4, 1933, in this county while in the employ of Century Express Lines, Inc., a motor freight transportation company with headquarters at Cleveland.

The Industrial Commission contends on appeal, as it did in the trial court, that there was no contract of hire between Keefer and the Century Express Lines, Inc., at the time of the injuries, and that the relation-

ship of employer and employee did not exist; that Keefer was an independent contractor at the time; and that the trial court should have directed a verdict for the commission.

The record in the case is not altogether satisfactory and there is a dearth of definite information on some vital points connected with the unusual situation existing between the parties. However, certain undisputed facts emerge from the record which we think control the judgment.

The appellee, Keefer, owned a truck which he operated under contract with the Century Express Lines, Inc., referred to hereafter as Century. One Melvin Decker also owned and operated a truck under contract with Century. In each instance the trucks were operated under the name and P. U. C. O. license of Century; cargo and liability insurance was provided by Century and the company had exclusive control of the movements of the trucks, their loads, destinations and routes, and the owners were not allowed to haul for anyone else while under contract with Century. The usual contract provisions obtained as to division of earnings, viz., on a basis of 70% to the haulers and 30% to Century.

In the latter part of 1932, Melvin Decker bought another truck which was financed by the Norwalk Finance Company. Later he became delinquent in his payments to the finance company and that company brought an action to foreclose its chattel mortgage in the Common Pleas Court, took possession of the truck and had appellee, Chas. H. Keefer, appointed receiver of the truck by the court. The finance company then made an arrangement with Century whereby it appears that Keefer was to operate this truck for Century under the same arrangements as the other Decker truck and the other Keefer truck were being operated. No written contract was made, and the

terms and arrangements are indefinitely testified to by the parties who made them. It is undisputed, however, that Keefer began to operate this truck for Century, after having a talk with the president of Century regarding the arrangements; that Century exercised exclusive control over the operation of such truck by Keefer; that the truck carried Century's name, operated under Century's P. U. C. O. license, carried only Century's cargoes, picked up cargo only where Century ordered, hauled only over routes designated by Century, and delivered only where Century ordered. Other than actual operating expenses, the proceeds of hauling were turned over by Keefer to Century and that company deducted its share and paid the balance over to the Norwalk Finance Company to apply on the mortgage of Decker on the truck Keefer was driving as receiver. Keefer's services were apparently to be paid for out of the finance company's share of proceeds. They may or may not have been paid for, the record not being very clear; nor is there evidence that Keefer received or was to receive any pay from any other source as receiver.

While operating the truck on February 4, 1933, Keefer sustained the injuries which are the basis of his claim. The injuries suffered by claimant resulted when the truck in question, while being operated by him, was struck by a train and rendered practically valueless. The proceeds of the property damage insurance policy on the truck, held by the finance company, satisfied its claim and the receivership was ended. The receivership was, of course, primarily for the benefit of Decker and the finance company, and it does not appear that Keefer was allowed or received any fees as receiver, other than what he may have earned as operator of the truck for Century.

The president and manager of Century, which later became bankrupt, testified that when that company

was operating, it contributed to the state Workmen's Compensation Fund for its "employees"; and that at one time they deducted from the earnings of the truck haulers to create contributions to that fund for them, but later the money was returned to them. He testified that he "considered Keefer an employee," but again the record is not definite whether Keefer was listed among the "employees" referred to as having been covered by the contributions made. However, the answer of the commission admits that Century, at the time appellee's claim arose, was a contributor to the State Insurance Fund. Failure to contribute, if Century came within the requirements of the law, would not bar appellee's claim if he is otherwise entitled to it. Section 1465-74, General Code.

Appellant cites two cases, among others, as determinative of this case in its favor, but we think that while they are determinative of this case under the undisputed evidence, the result is the other way. The cases referred to are *Industrial Commission* v. *Laird,* 126 Ohio St., 617, 186 N. E., 718, and *Fisher Body Co.* v. *Wade,* 45 Ohio App., 263, 187 N. E., 78. In the *Laird case,* the Supreme Court said, in paragraph four of the syllabus:

"The vital test, in determining whether a person employed to do a certain work is an independent contractor or a mere servant, is the right of control over the work reserved by the employer."

In the *Wade case,* the court of this appellate district said:

"The test for determining whether one person is an employee of another is whether the alleged employer has the right to exercise control over the other as to the work he has undertaken to do. 'The control of the work reserved in the employer which makes the employee a mere servant is a control, not only of the result of the work, but also of the means and manner

of the performance thereof; where the employee represents the will of the employer as to the result of the work but not as to the means or manner of accomplishment, he is an independent contractor.' " *Carman* v. *Steubenville & Indiana Ry. Co.*, 4 Ohio St., 399; *Clark* v. *Fry*, 8 Ohio St., 358, 72 Am. Dec., 590; *Pickens & Plummer* v. *Diecker & Bro.*, 21 Ohio St., 212, 8 Am. Rep., 55; *Hughes* v. *Cincinnati & Springfield Ry. Co.*, 39 Ohio St., 461.

"The ultimate question is not whether the employer actually exercises control over the performance of the work, but whether he has the right to control. * * * And it makes no difference whether the control is of a part or the whole of the work." 21 Ohio Jurisprudence, 625, Section 3.

In the instant case it is undisputed that appellee, Keefer, hauled exclusively for Century, under Century's name and license, over exclusive routes designated by it and no other, picking up, hauling and delivering only as directed by it and not otherwise, and under its cargo and liability insurance. Under the foregoing authorities and others of similar tenor, can it be said that the verdict in this case is not supported by the evidence that Century reserved the right to control not only the result of the work, but the manner of its performance? The issue was submitted to the jury under uncriticized instructions and the jury found that the relation of employer and employee did exist. Can we say, under the evidence, that reasonable minds should have reached the opposite conclusion? We do not think so. *Industrial Commission* v. *Laird, supra,* paragraph three of the syllabus.

We feel further fortified in our view by a consideration of the case of *Glielmi* v. *Netherland Dairy Co., Inc.*, 254 N. Y., 60, 171 N. E., 906, a case strikingly parallel in its facts to the instant case. The terse and pertinent opinion in that case, written by Judge Car-

dozo, then chief justice of the Court of Appeals of New York, expresses our views of the facts here presented and, as stated by the eminent jurist in his opinion: "The existence of that relation [employer and employee], if it may not be adjudged as an inference of law, is, at least, upon this record, a legitimate inference of fact."

The *Glielmi case* is cited and discussed with approval by our Supreme Court in *Coviello* v. *Industrial Commission,* 129 Ohio St., 589, at 595, 196 N. E., 661.

It is our opinion that upon the record and under the authorities we are required to affirm the judgment and that will be the order.

*Judgment affirmed.*

LLOYD and CARPENTER, JJ., concur.