servancy Court will be and the same is hereby affirmed.

*Judgment affirmed.*

SHERICK, P. J., and MONTGOMERY, J., concur.

FENSTERMAKER, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

(Decided April 10, 1939.)

*Mr. W. R. Price* and *Mr. H. S. Topper,* for appellee.
*Mr. Thomas J. Herbert,* attorney general, and *Mr. P. R. Taylor,* for appellant.

OVERMYER, J. The case under above title is in this court on appeal on questions of law by the Industrial Commission of Ohio, to secure a reversal of a judgment entered in the Court of Common Pleas against it and in favor of appellee.

The rejection of the claim by the commission was based upon the finding that appellee was not, at the

time of injury, an employee of the claimed employer, the Scott Transportation Company, and this is the defense asserted in the lower court and here. If there is credible evidence to support the finding and judgment of the trial court on that point, the same can not be disturbed, no prejudicial errors being urged or found in the record otherwise to warrant a reversal.

The only witnesses testifying are the claimant, Fenstermaker, on his own behalf, and one Alfred H. Sachs, an attorney at law of Cleveland, Ohio, also engaged in the motor freight transportation business. He was a witness for the Industrial Commission, resisting the claim, and he states he is connected with a number of companies and was president of the Manufacturers Trading Corporation and secretary and manager of the Scott Transportation Company and the Century Express Lines, Inc., at the times here involved, operating from one address in Cleveland from docks and loading platforms of the Scott Transportation Company on Third street in that city.

The record is quite scant and obscure on some vital points with reference to which official and definite information was available and could have been furnished the court, and by the testimony of Sachs is again presented the picture of an elusive, changing and shadowy hydra-headed relationship among motor transportation companies under one management, which so frequently appears in the courts in cases involving highway collisions and claims of injured workmen for industrial compensation.

The following undisputed facts are gathered from the record: On July 7, 1935, appellee was engaged, with one Dale Miller, in driving a truck loaded with merchandise freight from Cleveland, Ohio, to Chicago, Illinois, and while passing through this county the truck collided with an automobile traveling in the opposite direction, as a result of which both Fenstermaker and Miller received injuries. The truck in question was owned by a firm known as Miller Bros. of

Cleveland, and Dale Miller is a son of one of the members of that firm. The truck was loaded the day or evening before at the docks of the Scott Transportation Company at Cleveland. The merchandise was consigned to Chicago, and a return load was to be brought from Chicago to Cleveland to the Scott company docks. The truck had the name of the Scott Transportation Company painted on its sides. The Scott company furnished the gas and oil for the start of the trip and gave the men twenty dollars, which appellee claims was for expenses and wages for the trip. Appellee did not own a P. U. C. O. license and number, nor did Miller Bros. have such license or number for the truck, the P. U. C. O. number appearing on the truck on the trip in question, and cargo and liability insurance was furnished by the Scott company, or at least by someone in authority at the Scott company loading docks.

It is further undisputed that the appellee was absolutely under the control of those in authority at the Scott company docks as to the loading, the destination, the route to be taken, and this had been the rule and the fact for the period of six months of the driving of the truck by appellee prior to the accident. Written instructions were given him at the Scott company docks by a dispatcher before leaving on the trip in question, giving directions where the freight and merchandise were to be hauled and unloaded, what stops were to be made enroute, what route to follow, from what points he was to telephone Cleveland as to progress made, etc. At the Chicago terminal of the company, appellee was to receive instructions as to the return load and trip. In other words, appellee was on the trip under the exclusive control of those in authority at the Scott company docks and their representatives at Chicago; he was driving a truck bearing the Scott company name and under a P. U. C. O. number appearing on the truck with the Scott Transportation Company's name.

Mr. Sachs, however, says all these matters are of no significance, and it remains for the court to interpret, rightly or wrongly, his explanation, which was as follows:

"Q. Who were the Miller Bros.? A. Well, they were people engaged in the masonry or carpenter contracting business, and who also owned some trucks, *and at that particular time, they were hired by an independent contractor, one set of their trucks to the Century Express Lines, Inc.*

"Q. In your official capacity, Mr. Sachs, you know what relationship existed between the Miller Bros. and the Scott Transportation Company and the Century Express Company? A. None whatever with the Scott Transportation Company, *except that the Century Express Lines, Inc., they were independent contractors.*" (Italics ours.)

What he evidently meant was that Miller Bros., as independent contractors, had a contract to "hire" some of their trucks to Century Express, but the language is very uncertain and indefinite and may mean just what it says, although his later testimony indicates otherwise.

Sachs says further that the truck on the trip here involved was under a Century Express P. U. C. O. license and number, and cargo and liability insurance, and then to close the argument, he says that this must be true because the Scott company had a franchise to haul freight only east from Cleveland to Buffalo, and the Century Express had the franchise to haul west to Chicago and beyond, and that if this truck, going to Chicago, carried the Scott company name painted on its sides, it was only to advertise the fact that that company was soliciting Chicago and waypoints business for eastern delivery. He further states that appellee was not an employee of the Scott company; that he was not on the payroll of the Scott company reported to the Industrial Commission, but that Century Express had the usual 70-30 per cent contract with

Miller Bros., owners of the truck; that every two weeks a settlement was made by Century Express with Miller Bros., and that the twenty dollars given appellee for the trip in question was an advance by Century Express for expenses and wages against the next settlement date with Miller Bros.

As we understand the law, every truck on the highways, engaged in transportation of freight, must be registered with the Public Utilities Commission at Columbus, and if this truck was at the time being operated by Century Express under contract with an independent contractor, Miller Bros., and under Century Express P. U. C. O. license and number, then the official record of that fact was available and would settle the controversy on that point. It is not furnished. If, as Mr. Sachs testifies, this truck, under the P. U. C. O. number it carried, had no franchise to carry freight west from Cleveland, then are we to suppose this truck driver was to be charged with the responsibility of taking the truck unlawfully the "wrong way"?

Mr. Sachs was secretary and manager of both companies and says:

"The Scott Transportation Company was associated with the Century Express Lines, Inc., and from time to time exchanged freight."

Through Mr. Sachs a "settlement sheet" was offered in evidence showing transactions and bimonthly settlement between Century Express and Miller Bros. for the period ending December 12, 1934, but he states he was unable to find a "settlement sheet" for the period covering the date of this accident, July 7, 1935, nor for several months before, but states there were such "settlement sheets" made. He then states that Fenstermaker, on the date of the accident, was working for Miller Bros., and that neither the Scott company nor Century Express paid him for his work.

Appellee, Fenstermaker, testified that some months

prior to the accident, he was driving the same truck for Miller Bros., but even then "figured it was the Scott Transportation Company truck because it had Scott Transportation wrote on it." But he states that when, as he says, he was driving for Miller Bros.:

"I was driving and taking stuff to where I was told by the Scott Transportation Company, and unloading and reloading it at Chicago. * * * I don't know whether it was theirs or not, as I told you. It was Scott Transportation Company and P. U. C. O. on there, and all their names on it, and not Miller's name on it."

Asked who hired him, he said, "Well, I don't know. I figured the way things went, I got my orders at the Scott Transportation Company." Counsel for appellee at this point stipulated that the truck was owned by Miller Bros.

It appears that Miller Bros. went back to their general contracting business, carpentering, etc., about January 1, 1935, and Fenstermaker says "Chris Miller turned the truck over to me." Asked if on July 7, 1935, he was working for or hired by Miller Bros., he said "No sir, the truck was turned over to me." He states he received no wages from Miller Bros. for the trip in question, or for other trips after January, 1935, but received his pay from the Scott company, that is:

"My wages came out of the money that was given us for expenses and wages to Chicago. We got ten dollars a round trip to Chicago. * * * That was the way it was all the time. When I was working for Miller, I was getting the same thing, I got it from the Scott Transportation Company, same as I always did."

He again says:

"He [Chris Miller] turned it over to me, in my charge; I didn't know it was his truck or whose it was because it had the Scott Transportation Company marked on the semi- and the tractor. No Miller sign on it whatever."

On this highly unsatisfactory record, the trial court found for appellee. There being a dearth of evidence, and that strictly in conflict, how can this court say that the judgment is against the weight of the evidence? Both the Scott company and Century Express admittedly paid premiums to the State Insurance Fund and both are amenable to the provisions of the Workmen's Compensation Act. Appellee was admittedly injured in the course of his employment. Someone was his employer. It is not disputed that a dispatcher at the Scott company docks gave him absolute directions for the trip "as he always did," and paid appellee some money. The name of the Scott company appeared all over the truck and tractor. He was ordered to deliver to and report at the company terminal at Chicago, and there receive instructions for a return load. There is no evidence except Sachs' declaration that appellee received his pay from Miller Bros., which appellee denies, and we do not conceive it to have been appellee's duty, in the circumstances, to have produced official records from Columbus to prove he was an employee of Miller Bros. and not the Scott company, nor to have produced the testimony of the Miller brothers to dispute his claims. The mere fact that he may not have been reported on the Scott company payroll would not defeat his claim, if otherwise entitled to compensation. *Keefer* v. *Industrial Commission,* 58 Ohio App., 365, 16 N. E. (2d), 579, paragraph two of the syllabus.

Many cases might be cited on the distinctions between an "independent contractor" and "employer and employee" as the terms are used in the application of the Workmen's Compensation Act. We cite a few: *Keefer* v. *Industrial Commission, supra;* 26 Ohio Jurisprudence, 154 *et seq.,* and supplement to same; *Industrial Commission* v. *Shaner,* 127 Ohio St., 366, 188 N. E., 559.

Finding no prejudicial error in the record, and that

the finding and judgment of the trial court is not against the manifest weight of the evidence presented, the judgment is affirmed.

*Judgment affirmed.*

CARPENTER and LLOYD, JJ., concur.