LLOYD, APPELLEE, *v.* ADMR., BUREAU OF WORKMEN'S COMPENSATION, ET AL., APPELLANTS.

(No. 372—Decided December 11, 1963.)

*Mr. Arthur F. Graham* and *Mr. Dwight L. Fullerton*, for appellee.

*Mr. William B. Saxbe*, attorney general, *Mr. Robert M. Duncan* and *Mr. George H. Fell*, for appellants.

GUERNSEY, J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Seneca County, entered upon a jury verdict, determining that the claimant, Charles Lloyd, is entitled to compensation under the provisions of the Workmen's Compensation Act by reason of an injury allegedly sustained while an employee in the service of the Sentle Trucking Corporation, hereinafter referred to as Sentle. Lloyd had appealed to that court from a denial by a regional board of review of his claim for compensation, the Industrial Commission having refused appeal thereto from such denial. Sentle and the Administrator of the Bureau of Workmen's Compensation are the appellants in this court.

Lloyd was the owner of a tractor and trailer which he had leased to Sentle but which he habitually drove, hauling for Sentle loads of steel from Weirton, West Virginia, to Chicago, Illinois, and hauling for Sentle loads of building materials on the return trips. Sentle is a certificated common carrier operating in interstate commerce, is subject to the provisions of the Ohio Workmen's Compensation Act, and is a participating em-

ployer thereunder. On October 18, 1960, while enroute with a load of steel to Chicago, Lloyd noted, at a point about six miles east of Tiffin, Ohio, the city in which he made his home, that one of the tires on his trailer was flat. He continued into Tiffin; parked his vehicle at the same truck stop where he usually parked while at home; requested a mechanic there to change and repair the tire; and then proceeded by other transport to his home. On the next day he checked and found that nothing had been done. When he found the same situation prevailing on the morning of October 20, 1960, and intending to proceed on his way to Chicago at his earliest opportunity, he decided to accomplish the change and repair of the tire himself. He thereupon jacked up the axle, took the lugs off the wheel and slid the tire and rim assembly off the wheel. He then rolled the tire and rim assembly to the front of a building at the truck stop; removed a valve core; removed a rim ring; broke the bead loose from the rim; removed the tire from the rim and the flap from the tire; and, when attempting to pull and remove the tube from the casing, the tube suddenly let loose, whereupon he fell against the side of the building incurring the injuries for which he makes claim.

The appellants here do not dispute these facts and, among other things, concede and claim that Lloyd "had a dual relationship to Sentle; that plaintiff (Lloyd) was an owner-driver and, while a driver, he was engaged in activity as an employee," and claim that "while repairing his truck and equipment, he was engaged in activity as an owner and not as an employee."

By stipulation, three documents were received in evidence as bearing on the relationship between Lloyd and Sentle, namely, the written truck lease agreement executed between them, whereby the tractor and trailer were leased by Sentle from Lloyd for a period of time including the time in question; the so-called Central States Area Over-the-Road Motor Freight Agreement between Lloyd's union and Sentle, effective at the time in question; and a document purporting to express an agreement between Lloyd's union and Sentle requiring all owner-operator leases executed thereafter to incorporate therein certain covenants respecting the driving, control, minimum rental of leased vehicles and minimum wages of drivers thereof.

The appellants assign error of the trial court in three particulars, specifically:

"1. Overruling of defendants' motion for judgment at close of plaintiff's evidence, and at the close of defendants' evidence.

"2. Refusal of the court to give defendants' request to charge before argument No. 6, which was as follows:

" 'I charge you that the independent contractor relationship is not changed either by physical examination requirement imposed upon owner-operators and their drivers by the defendant motor freight company, by the necessity of complying with Public Utilities Commission and Interstate Commerce Commission rules and Sentle's own rules, by Sentle's right of inspection and investigation of the drivers, by Sentle placing decals containing its name and assigned numbers on owner-driver's equipment, by the dispatching of shipments by Sentle, by the collection of freight and C. O. D. charges in Sentle's name of the owner-drivers or by the owner-driver in the equipment lease turning over to Sentle the exclusive possession, control, use and responsibility to the leased equipment to satisfy the requirements of the rules of the Interstate Commerce Commission.'

"3. Denial by trial court of defendants' motion for new trial and of defendants' motion for judgment notwithstanding the verdict."

Assignment of error No. 2 is based on the assumption that the evidence shows Lloyd to have been engaged as an independent contractor in his hauling for Sentle. As appellants now concede and claim that he was *employed* as a driver for Sentle, an instruction based on the relationship of independent contractor would be wholly erroneous, and was properly rejected. Assignment of error No. 2 is, therefore, without merit.

The law is too well-settled to deserve repetition that when a defendant proceeds to offer his own evidence after his motion for judgment, or his motion for directed verdict, made at the close of plaintiff's evidence, has been overruled, he is deemed to have waived any error existing by reason of such overruling. The former part of the first assignment of error is therefore without merit.

As there is no contention here that Lloyd's injury was not accidental, as defined in subparagraph (C) of Section 4123.01, Revised Code (128 Ohio Laws, 743, 744), the sole issue left is whether his injury was "received in the course of, and

arising out of," his employment, as therein defined and as in Section 4123.54, Revised Code (128 Ohio Laws, 743, 755), provided. The jury's verdict was equivalent to an affirmative finding on this issue. The Ohio cases are uniform to the effect that whether there was an injury in the course of and arising out of employment is ordinarily a question of fact for the jury, unless the evidence is such that reasonable minds may arrive at only one conclusion, in which latter case, a court may determine such question as a matter of law. See *Donlin* v. *Industrial Commission*, 79 Ohio Law Abs., 282; *Industrial Commission* v. *Arnold*, 20 Ohio Law Abs., 410; *Baker* v. *Industrial Commission*, 44 Ohio App., 539; *Industrial Commission* v. *Ahern*, 6 Ohio Law Abs., 500, judgment reversed, 119 Ohio St., 41; and *Taylor* v. *Industrial Commission,* 13 Ohio App., 262. The general rule is stated in 100 Corpus Juris Secundum, 869, Workmen's Compensation, Section 611, as follows:

"The question of whether an accident, injury, disability or death arose out of, and in the course of, employment is a question of fact where the facts are in dispute and the evidence is conflicting or subject to different conclusions, but otherwise may be a question of law, and a similar rule applies to related, subsidiary questions."

Could the trial court have determined, or this court determine, as a matter of law, that Lloyd's injury, incurred while repairing the trailer tire, was *not* received in the course of, and arising out of, his employment? It will be noted that we distinguish between *change* of tire and *repair* of tire, because the undisputed evidence shows that Lloyd was not injured while accomplishing the usual change of a tire, *i. e.*, by removing one tire from a wheel and replacing it thereon by another, but was injured instead while in the process of repairing a tire which he had already successfully removed from the wheel of the trailer. The record is silent as to whether a spare tire was available at the time and place.

In *Ashbrook* v. *Industrial Commission* (1939), 136 Ohio St., 115, the Supreme Court held:

"Under the Workmen's Compensation Law, an injury is sustained in the course of employment when it occurs while the workman is engaged in the performance of the duty he is employed to perform. It arises out of the employment when

there is a causal connection between the conditions under which the work is required to be performed and the resulting injury.''

Subsequently, the Supreme Court held in *Sebek* v. *Cleveland Graphite Bronze Co.* (1947), 148 Ohio St., 693:

''To be entitled to workmen's compensation, a workman need not necessarily be injured in the actual performance of work for his employer. It is sufficient if he is injured in a pursuit or undertaking consistent with his contract of hire and which in some logical manner pertains to or is incidental to his employment.''

The first and fourth paragraphs of the syllabus of the *Sebek case* were thereafter overruled in *Johnson* v. *Industrial Commission*, 164 Ohio St., 297, but the third paragraph, quoted above, was not overruled, although the framework of the case, upon which it stood, was swept from under it. Nevertheless, the third paragraph is phrased from a conclusion in Judge Zimmerman's opinion (page 698), concurred in unanimously, based on the holdings of the Supreme Court in a series of some eight earlier compensation cases, and a conclusion which we believe to be a sound and fair statement of the law of Ohio as it now stands. In a decision not cited by Judge Zimmerman, *Delassandro* v. *Industrial Commission* (1924), 110 Ohio St., 506, 512, it was stated by Judge Day:

''* * * It is sufficient to say that the decisions indicate a liberal construction of the acts, the test generally adopted being whether or not the injury was sustained and occasioned by reason of the employment, or in furtherance of the employer's interests, or in the performance of acts reasonably connected therewith.''

Although the parties have relied heavily on the documentary evidence, to which we have heretofore alluded, we do not find the same conclusive. The so-called Over-the-Road Motor Freight Agreement does govern many of the employer-employee relationships between Sentle and Lloyd, primarily with respect to wages, hours and working conditions designed for the protection of Lloyd and other members of the union, but that agreement is practically silent, except by inference where possible, as to the scope and character of the *duties* of a truck driver. The document purporting to express an agreement between Lloyd's union and Sentle requiring all owner-operator leases

executed thereafter to include certain covenants is of similar character. Moreover, it does not constitute proof that these covenants were actually included in the owner-operator lease executed between Lloyd and Sentle. The written lease agreement shows, in and of itself, that such covenants were not included therein. The provisions of the lease agreement, with respect only to the tractor and trailer, appear to have been performed by each of the parties, and those with respect to the furnishing of drivers appear to have been waived by the parties in favor of the provisions of the over-the-road agreement. There were no provisions in the lease agreement with specific application to a *driver's* duties to accomplish repairs.

Notwithstanding the lease agreement provides that the owner of the vehicles warrants that they shall be maintained at his expense and that it is agreed that he shall pay all costs of maintenance and repair, the agreement does not provide that he shall repair the vehicles himself or cause them to be repaired. The agreement provides instead that "for the duration of this lease *owner* leases equipment unto *carrier* for *carrier's* exclusive possession, control, use and responsibility," and provides further that "any use of equipment by *owner* or by any person other than *carrier* prior to written termination of this lease is specifically designated a breach of this lease." It is provided also that the "*carrier* may sub-lease the equipment when permitted by applicable laws and regulations and *carrier* shall be considered as *owner* for the purpose of such sub-leasing."

It is therefore apparent that the lease provisions contemplated that repairs would be accomplished by Sentle, at Lloyd's costs; that, although Lloyd might come into physical possession of the equipment during the term of the lease, his possession, in order that there not be a breach of the lease, was not as owner, but was constructively Sentle's possession, carried out through Lloyd as their employee-driver and in the furtherance of Sentle's business of hauling in interstate commerce. As Sentle is a corporation, it could accomplish its responsibility as to repairs only through its employees or by contracting to have them done by others.

Under these circumstances, and in consideration of all the evidence, reasonable minds could conclude that the accomplish-

ment by Lloyd of such minor repairs as were within his abilities, including the repair of a flat tire, was in the furtherance of his employer's interests, consistent with his contract of hire as an employee-driver, and logically pertinent to such employment. If such were concluded, then Lloyd's injury would clearly be in the course of, and arising out of, his employment, as defined and limited in the *Ashbrook, Sebek and Delassandro cases, supra.*

As reasonable minds might, on the evidence herein, arrive at such conclusion, the trial court could not, and this court may not, conclude or determine, as a matter of law, to the contrary. See, also, *Industrial Commission* v. *Arnold,* 20 Ohio Law Abs., 410.

For these reasons, the jury verdict was proper and the trial court did not commit error in overruling appellants' motion for judgment at the close of their evidence or in denying their motions for new trial and for judgment notwithstanding the verdict. There being no error prejudicial to the appellants in any of the particulars assigned and argued, the judgment of the trial court is affirmed.

*Judgment affirmed.*

MIDDLETON, P. J., and YOUNGER, J., concur.